Argued and submitted February 6, petition dismissed
as improvidently allowed June 3, 1980

STATE OF OREGON,
*Respondent,*

*v.*

ALLEN GENE BEASON,
*Petitioner.*

(TC 78-7263, CA 14345, SC 26661)

611 P2d 1150

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Christian W. Van Dyke, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

PER CURIAM.

## PER CURIAM.

We allowed defendant's petition for review in this case to consider an aspect of a question left open in our decision in *State v. Carter/Dawson,* 287 Or 479, 600 P2d 873 (1979). That aspect was the extent, if any, to which police could properly detain the driver or owner of a motor vehicle to make a license or registration check after the police have determined there was no basis in fact to charge the driver with the violation of traffic laws for which the "traffic stop" had been made. We have discovered that the record of this case makes it an inappropriate one to explore that aspect of the law; therefore, we now view the petition for review as having been improvidently allowed. It follows that we order the petition dismissed on that basis. *Day v. SAIF,* 288 Or 77, 602 P2d 258 (1979); *Fitch v. Public Welfare Div.,* 279 Or 297, 567 P2d 117 (1977).

## TONGUE, J., Dissenting.

The majority has dismissed the petition for review in this case as having been "improvidently allowed" for the reason that "[t]he record of this case makes it an inappropriate one to explore" the question whether, and to what extent, the police may properly "detain the *driver or owner* of a motor vehicle to make a license or registration check after the police have determined that there was no basis in fact to charge the driver with the violation of traffic laws for which the traffic stop was made." There may be cases in which petitions for review which have been allowed should be dismissed as having been "improvidently allowed," but this is not such a case, in my opinion.

The petition for review in this case was allowed by this court on December 27, 1979. At that time it was clear from the record that the defendant was not the driver or owner of the motor vehicle involved, but was a passenger in a motor vehicle which had been

stopped by a police officer who had observed it "weaving" erratically and believed that the driver may have been intoxicated. After checking the driver and finding that he was not intoxicated, the officer returned to his patrol car with the driver's operator's license and the registration card of the motor vehicle to make a radio check of its registration. Before he could do so, however, he heard a broadcast on his radio with descriptions of two persons suspected of having just robbed a filling station. Because those descriptions matched occupants of the motor vehicle, the officer investigated further, found evidence of the robbery in the motor vehicle and arrested the occupants, including defendant, a passenger.

Upon being charged with robbery, defendant filed a motion to suppress the evidence of the robbery found in the motor vehicle. At that time no contention was made by the state that defendant, as a passenger, had no right or "standing" to file such a motion. Upon denial of that motion and conviction of the defendant, he appealed to the Court of Appeals, contending that the officer, upon finding that the driver of the vehicle was not intoxicated, had no right to detain the vehicle to make a motor vehicle registration check, with the result that the trial court erred in denying his motion to suppress. Again, no contention was made by the state that defendant, as a passenger, had no right to file such a motion. Instead, the state contended that defendant's motion was properly denied on the ground that the officer had the right to detain the motor vehicle for the purpose of making a motor vehicle registration check.

The Court of Appeals affirmed defendant's conviction from the bench without opinion. (43 Or App 3, 603 P2d 371 (1979)). This court then allowed defendant's petition for review to consider defendant's contention that when the police stop a motor vehicle for a suspected traffic violation and then determine that no such infraction had been committed, they may not

detain the motor vehicle to "run a license check absent articulable facts that there is either an outstanding warrant for the defendant or the likelihood of [a] license violation."

On February 6, 1980, oral argument was presented by both parties before this court. Again, no contention was made by the state that defendant, as a passenger, had no right or "standing" to make such a contention. Instead, the state maintained that the officer had the right to detain the motor vehicle for the purpose of making a motor vehicle license check. After oral argument the case was assigned to this member of the court for preparation of a proposed opinion to decide that question.

On March 14, 1980, a proposed opinion was submitted which, if approved by the court, would have held that under the facts of this case the officer had the right to detain the motor vehicle for the purpose of making a motor vehicle registration check, citing the recent opinion by the Supreme Court of the United States in *Delaware v. Prouse,* 440 US 648, 659, 99 S Ct 1391, 59 L Ed 2d 660 (1979), among other cases and authorities.

Now, several weeks later, the majority of this court has apparently decided that defendant, as a passenger, might not have the right or "standing" to complain of the detention of the motor vehicle. Instead of calling for supplemental briefs or further oral argument on that question, however, as well as the related question whether such an objection had been waived by the state, the majority has chosen to dismiss the petition for review in this case as having been "improvidently allowed."

With all due respect to the majority, I submit that in doing so the majority of this court is being inconsistent, if not somewhat schizophrenic. The majority of this court has not hesitated in deciding cases *sua sponte* upon grounds which had not been

urged, much less argued, by either party. *See, e.g., McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979) (see dissenting opinion at 557), and *LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204 (1978) (see dissenting opinion at 157). In doing so the majority of this court has decided important questions which had not been presented by the parties for decision by this court. Also, in some previous cases this court has decided questions after allowing petitions for review when such questions were of public importance in need of decision, even though it subsequently developed that there were impediments to the proper raising of such questions by the appealing party. *See State v. Koennecke,* 274 Or 169, 175, 545 P2d 127 (1976).

Having done so in such cases, this court should not refuse to decide a case such as this in which a question of considerable public importance has been submitted for decision on the ground that "the record in this case makes it an inappropriate one to explore" that question. It is a common practice for police officers, after stopping motor vehicles for suspected traffic infractions, to briefly detain such vehicles for the purpose of making radio checks on the validity of the driver's license and the motor vehicle registration. If this common practice is invalid, either by reason of the provisions of existing Oregon statutes or by reason of requirements of the Constitution of Oregon or of the United States, it is of public importance that the police be so informed and that the drivers, owners, and occupants of motor vehicles also be so informed.

As previously stated, it was clear from the record in this case at the time that defendant's petition for review was originally allowed by this court that defendant was a passenger in the motor vehicle. As also previously stated, the State of Oregon has never challenged the right of "standing" of this defendant to challenge the validity of this common police practice. If the majority is concerned over defendant's right or "standing" to do so, supplemental briefs or further

oral argument on that question can be easily arranged, as has been done on occasion in other cases.

For the majority to instead dismiss this petition for review as having been "improvidently allowed" can only convey the impression that the majority of this court is reluctant to face up to a decision on the important question presented by this case involving the validity of a common police practice and, as a result, to cast doubt upon the validity of that practice.

Of equal concern is the question of how well and how responsibly the present members of this court are performing their function as a court of review of decisions by the Court of Appeals as exemplified by the manner in which the majority has treated this case.

In 1968, this court's last year as a court of direct appeal, prior to the establishment in 1969 of the Court of Appeals, with partial jurisdiction over direct appeals, this court decided 271 cases by written opinions by the seven regular members of the court (plus 74 opinions by pro-tem judges), or an average of 38.7 opinions per regular member of the court. In 1976, after the establishment of the Court of Appeals, with partial jurisdiction over direct appeals, but prior to the extension of its jurisdiction to all direct appeals (with few exceptions), this court received 467 petitions for review. In that year this court decided 288 cases by written opinions (plus 17 opinions by pro-tem judges), including both petitions for review and cases on direct appeal, or an average of 41 per regular member of the court. In 1979, after the Court of Appeals had been granted jurisdiction over all direct appeals, this court received 552 petitions for review and allowed 104 petitions for review. In that year, however, this court decided only 195 cases by written opinion, including both petitions for review, "holdover" direct appeals and other cases, or an average of 28 per member of the court.[1]

---

[1] For more detailed statistics for 1976, 1977 and 1978, see dissenting opinion in *State v. Classen,* 285 Or 221, 241, 590 P2d 1198 (1979).

During the first five months of 1980 this court received 285 petitions for review and allowed 56 petitions for review, or an average of 11 per month. During the first five months of 1980 this court also heard 60 cases on oral argument, including petitions for review, ballot title and mandamus cases, or an average of 12 per month, as compared with 70 cases heard during the first five months of 1979, or an average of 14 per month.[2] At this rate, projected on an eleven-month basis (the court does not hear cases during August), the court would hear 132 cases during 1980. If all of such cases were decided during 1980, this would result in 132 opinions, or an average of 19 per member of the court.

As of the end of 1978 this court was far behind both in its handling of petitions for review by the allowance or denial of such petitions and also in its decision of cases on which petitions for review had been allowed. (For statistics see dissenting opinion in *State v. Classen,* 285 Or 221, 238-242, 590 P2d 1198 (1979)). Since then this court has made progress both in the handling of petitions for review and in the number of cases "assigned but unwritten for over 90 days" - one of the primary indices of its promptness in the decision of cases after oral argument.[3]

As stated, however, by the dissenting opinion in *State v. Classen, supra,* at 243, n. 12:

"* * * when this court becomes exclusively a court of review in 1979 the problem will be not only whether the court can then decide without unreasonable delay the cases arising from petitions for review allowed by it, but also whether the court can do so without unduly restricting its 'intake' by the denial of petitions for review in cases which could and should

---

[2] During the first five months of 1980 only 43 cases were decided by written opinion, or an average of 8.6 per month, compared with 98 cases decided by written opinion during the first five months of 1979, or an average of 14 per month. This comparison is misleading for various reasons, however, including the illness of another member of the court.

[3] See dissent in *State v. Classen, supra,* n. 1 at 238.

be decided by it if this court is able (and willing) to work to the full extent of its capacity."

The small number of cases decided during 1979 and heard during the first five months of 1980 suggests that this problem remains. The handling of this case by the majority of this court would also appear to be symptomatic of this problem.

In my view, the petition for review in this case was properly allowed by this court and presents a question of public importance which should be decided by this court and which this court has ample time to consider and decide. For these reasons I dissent from the decision by the majority of this court to dismiss this petition for review as "improvidently allowed."