Argued and submitted February 3,
petition for review dismissed November 3, 1981

STATE HOUSING COUNCIL et al,
*Petitioners,*

*v.*

CITY OF LAKE OSWEGO et al,
*Respondents.*

(LCDC 78-030, CA 15395, SC 27432)

635 P2d 647

Robert E. Stacey, Jr., Portland, argued the cause and filed briefs for petitioners. With him on the reply brief was Mark J. Greenfield.

James M. Coleman, Lake Oswego City Attorney, argued the cause and filed briefs for respondent City of Lake Oswego.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondents LCDC and DLCD. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General.

Eleanore S. Baxendale, Assistant City Attorney, filed a brief for respondent City of Beaverton.

Kevin L. Hanway, Portland, filed a brief for National Association of Home Builders, Oregon State Home Builders Association, and Homebuilders Association of Metropolitan Portland as amici curiae.

PER CURIAM

Tongue, J., filed a dissenting opinion.

**PER CURIAM.**

In 1978 the City of Lake Oswego adopted an ordinance subjecting various kinds of land development to certain "systems development charges" for the capital costs of streets, sewers, parks, and water systems. The State Housing Council petitioned the Land Conservation and Development Commission ("LCDC") to review this ordinance for compliance with the commission's statewide planning goals, asserting that the ordinance was an exercise of the city's "planning and zoning responsibilities"[1] reviewable by LCDC under ORS 197.300(1)(c).[2] Petitioner 1000 Friends of Oregon, two associations of home builders, and three cities intervened in the LCDC proceeding. After considering certain preliminary issues concerning the State Housing Council's standing to initiate the proceeding, LCDC's hearings officer concluded that the ordinance was reviewable by LCDC and that the systems development charges contravened applicable procedural and substantive goals by increasing new housing costs without a justification supported by supporting findings and reasons.

---

[1] Former ORS 197.175(1) (1973) (amended by 1981 Or Laws, ch 748, § 15):

"Cities and counties shall exercise their planning and zoning responsibilities, in accordance with ORS 197.005 to 197.430, 215.055, 215.510, 215.515, 215.535 and 453.345 and the state-wide planning goals and guidelines approved under ORS 197.005 to 197.430, 215.055, 215.510, 215.515, 215.535 and 453.345."

[2] Former ORS 197.300(1) (as amended by 1977 Or Laws, ch 664, § 22) (repealed by 1979 Or Laws, ch 772, § 26):

"(1) In the manner provided in ORS 197.305 to 197.315, the commission shall review upon:

"(a) Petition by a county, city, special district governing body, or state agency, a comprehensive plan provision or any zoning, subdivision or other ordinance or regulation adopted by a state agency, city, county or special district that the governing body or state agency considers to be in conflict with state-wide planning goals approved under ORS 197.240.

". . .

"(c) Petition by a state agency, city, county or special district, any county governing body action that the state agency, city, county or special district considers to be improperly taken or outside the scope of the governing body's authority under ORS 197.190, 197.225 and 197.260.

"(d) Petition by any person or group of persons whose interests are

The commission did not adopt the hearings officer's recommended decision. Instead, its Final Order recited:

"The Ordinance presents a close question but we conclude that there is no substantial evidence in the record that the Ordinance impacts the availability of housing nor makes such housing unaffordable to persons who would otherwise be in the market for housing in Lake Oswego. An ordinance resulting in increased housing cost does not necessarily, by that fact alone, violate the interests to be protected [by Goal 2] or by Goal 10. An ordinance increasing housing costs may significantly affect a shift in land use or discourage affordable housing, and would then constitute a land use action and require the addressing of the planning goals. There is, however, no such evidence in this case."

The order concluded:

"It is hereby ordered and declared that the enactment of Ordinance No. 1706, creating a systems development charge, was not proven to be a land use action."

The Court of Appeals affirmed the commission's order. 48 Or App 525, 617 P2d 655 (1980). The court first pointed out that from the foregoing quotations "it is not completely clear whether [the order] was on the merits or jurisdictional grounds." The court then concluded that the commission did not have statutory jurisdiction to review the city's systems development charge for compliance with the land use goals.

The Court of Appeals based its conclusion on these considerations: On one hand, "the systems development charge has impacts on land use—the provision of public facilities and services, and the availability and affordability of housing." On the other hand, "the systems development charge is primarily a fiscal measure designed to raise and allocate public revenue." Although "taxation was once intended solely to raise revenue for government," it is now increasingly used to shape other social goals, including land use consequences such as the attraction of industry or

---

substantially affected, a comprehensive plan provision or any zoning, subdivision or other ordinance or regulation alleged to be in violation of state-wide planning goals approved under ORS 197.240."

urban rehabilitation. 48 Or App at 532. In ORS chapter 197, the Legislative Assembly might have intended that "(1) *all* fiscal policy that might impact land use must comply with the statewide planning goals; (2) *some, but not all,* fiscal policy must comply with the goals; and (3) *no* fiscal policy need comply with the goals, regardless of the extent of its impact on land use." Assuming that LCDC adopted the second of these interpretations, this is "the least satisfactory" answer, at least as phrased by the commission. A test which requires evidence of the land use effect of a fiscal measure in order to determine whether the local government must comply with the procedural goal requirement of a hearing and record on the measure is circular and unworkable. Therefore "no local taxation or budget ordinance has to comply with the goals." 48 Or App at 538.

We allowed review to examine whether this conclusion went too far to immunize local fiscal devices directed at land development from compliance with the statewide land use goals. After review was allowed, however, the Legislative Assembly undertook a revision of the land use laws. The eventual result was 1981 Oregon Laws, chapter 748. Because it appeared that the new legislation might affect the jurisdictional question decided by the Court of Appeals and the law applicable to future similar cases, we asked for additional memoranda. The responses show some disagreement about the effect of chapter 748. In part this is due to the fact that the opinion of the Court of Appeals addressed simultaneously the question whether local fiscal measures could be subject to the planning goals and whether LCDC had jurisdiction to review such measures for compliance with the goals.

Two statutory provisions are involved. One is ORS 197.175, *supra* n. 1, which obliges cities and counties to "exercise their planning and zoning responsibilities. . . in accordance with. . . the state-wide planning goals." That obligation, which has not been narrowly confined to the adoption of land use plans and zoning ordinances,[3] remains substantially unchanged.

---

[3] *See Meeker v. Bd. of Comm'rs of Clatsop Cty.,* 287 Or 665, 601 P2d 804 (1979) (subdivision), *Petersen v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977)

The second provision governs the procedure for review of local decisions. When the present case began, LCDC had authority to review "a comprehensive plan provision or any zoning, subdivision, or other ordinance or regulation" for compliance with the goals. Amendments made in 1979 divided the functions of review between the commission itself and a new Land Use Board of Appeals ("LUBA"). 1979 Or Laws, ch 772, §§ 1 to 6a. The provisions for review were further amended by 1981 Oregon Laws, chapter 748. Section 4 of the 1979 version placed the review of "land use decisions" with LUBA, subject to further review by the commission when an alleged goal violation was in issue.[4] A "land use decision" was defined in 1979 as including the adoption, amendment or application of a "zoning, subdivision or other ordinance that implements a comprehensive plan."[5] This definition of "land use

---

(annexation). The statute similarly uses the phrase "planning responsibilities," in sections addressed to state agencies and special districts which do not have responsibility for comprehensive land use plans and zoning in the narrow sense. ORS 197.180, 197.185.

[4] Or Laws 1979, ch 772, §§ 4(1) and 6(1):

"SECTION 4. (1) Review of land use decisions under sections 4 to 6 of this 1979 Act shall be commenced by filing a notice of intent to appeal with the Land Use Board of Appeals. . ."

". . .

"SECTION 6. (1) At the conclusion of a review proceeding under sections 4 and 5 of this 1979 Act, the board shall prepare a recommendation to the commission concerning any allegations of violation of the state-wide planning goals contained in the petition and shall submit a copy of its recommendation to the commission and to each party to the proceeding. . . ."

[5] 1979 Or Laws, ch 772, § 3:

"(1) 'Land use decision' means:

"(a) A final decision or determination made by a city, county or special district governing body that concerns the adoption, amendment or application of:

"(A) The state-wide planning goals;

"(B) A comprehensive plan provision; or

"(C) A zoning, subdivision or other ordinance that implements a comprehensive plan; or

decision" was changed in 1981 to include the adoption, amendment or application of a "land use regulation," a new term which in turn was defined to include "any local government zoning ordinance, land division ordinance. . . or similar general ordinance establishing standards for implementing a comprehensive plan." 1981 Or Laws ch 748, §§ 1(10) and (11).[6]

Since this case began, therefore, there has been a legislative change of initial review authority from LCDC to LUBA and a shift in the phrasing of the reviewable local action from "any zoning, subdivision, or *other ordinance or regulation,*" first to "zoning, subdivision, or *other ordinance that implements a comprehensive plan,*" and now to any "zoning ordinance, land division ordinance . . . or *similar general ordinance establishing standards for implementing a comprehensive plan*" (emphasis supplied). Petitioners contend that the changes in the italicized phrases do not affect LCDC's ultimate authority to review an ordinance

---

"(b) A final decision or determination of a state agency other than the Land Conservation and Development Commission, with respect to which the agency is required to apply the state-wide planning goals.

". . .

[6] 1981 Or Laws ch 748, § 1:

". . . .

"(10) 'Land use decision' means:

"(a) A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(A) The goals;

"(B) A comprehensive plan provision; or

"(C) A land use regulation; or

"(b) A final decision or determination of a state agency other than the commission with respect to which the agency is required to apply the goals.

"(11) 'Land use regulation' means any local government zoning ordinance, land division ordinance adopted under ORS 92.044 or 92.046 or similar general ordinance establishing standards for implementing a comprehensive plan. 'Land use regulation' does not include small tract zoning map amendments, conditional use permits, individual subdivision, partitioning or planned unit development approvals or denials, annexations, variances, building permits and similar administrative-type decisions."

". . .

such as the city's systems development charge.[7] The city contends that the Court of Appeals correctly denied LCDC's authority to review its ordinance under former ORS 197.300(1)(a), and that legislative action (and inaction) since LCDC's 1979 order "lend support to the City's argument that adoption of Ordinance 1706 was not an exercise of its planning and zoning responsibility." *Amicus curiae* disagrees with this assessment of legislative history. The commission's own reply to our supplemental questions suggests that "a systems development charge in limited cases could be viewed as a 'similar general ordinance establishing standards for implementing a comprehensive plan,' " in the terms of the new review provision.

Understandably, the ultimate question that concerns the parties is whether and by what criteria a local ordinance imposing fees or charges rather than prohibitions and permits can be an exercise of "planning or zoning responsibilities," subject to land use goals. The actual decision of the Court of Appeals, however, was that LCDC had not been given jurisdiction to review such an ordinance. On that question, the subsequent revisions of the commission's jurisdiction make an interpretation of former ORS 197.300(1) irrelevant beyond this case. This case itself is not moot. But if upon detailed scrutiny we were to disagree with the Court of Appeals about former ORS 197.300(1), we would still face the previously mentioned ambiguity whether the commission's order was on the merits or on jurisdictional grounds.

Under the circumstances, we conclude that the better course is to dismiss the present judicial review proceeding and leave these or other parties free to proceed under the amended statutes, if they are so inclined. The challenge to the city's ordinance before LCDC is essentially declaratory or injunctive in nature; it does not seek compensation or other remedy for some past injury. A remand

---

[7] With respect to the specific ordinance at issue here, petitioner argues that if the 1981 statute applied, it would be a "general ordinance establishing standards for implementing a comprehensive plan" because Lake Oswego's comprehensive plan contains a "Growth Management General Policy III" which provides that "the city will require new development to pay an equitable share of the costs of public facilities, particularly sewer, water, drainage, parks, open space and streets or traffic improvements."

to LCDC, even if this were proper under an interpretation of former ORS 197.300(1), would not leave the parties and the commission in the procedural posture provided for similar challenges under the present statutes, and it would not let the commission consider whether and how the recent amendments shed light on the criteria governing the reach of the goals. Also in a new proceeding, perhaps LUBA or LCDC may choose to refine its criteria when fiscal devices by their purpose or design qualify as land use regulations, which the Court of Appeals thought so farreaching and inexact as to be "substantively and procedurally unmanageable." Consequently we neither approve nor disapprove that view of the Court of Appeals. While such criteria remain reviewable as an interpretation of the statutes, it is preferable that the agency have the opportunity to consider the revised statutory scheme in the first instance. *See Springfield Education Ass'n. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), *McPherson v. Employment Div.,* 285 Or 541, 591 P2d 1381 (1979).

The petition for review is dismissed.

**TONGUE, J.,** dissenting.

I cannot in good conscience concur in the per curiam opinion which dismisses the petition for review in this case.

On February 3, 1981, this case was submitted for decision by this court. At that time this case presented for decision questions of considerable public importance: (1) whether, as was held by the Court of Appeals, LCDC lacked statutory jurisdiction to review local taxation or budget ordinances for compliance with statewide planning goals and, (2) if LCDC had such jurisdiction, whether a city ordinance which subjects various kinds of land development to certain "system development charges" for the cost of streets, sewers, parks and water systems was invalid as contrary to certain "goals" for land use planning as adopted by the state Land Conservation and Development Commission under the provisions of state statutes.

Because these questions were of public importance not only to the City of Lake Oswego and to LCDC, but also to other cities and to others interested in land use planning,

it follows that the original granting by this court of the petition for review of the decision by the Court of Appeals, which had held in favor of the city by holding that LCDC had no such jurisdiction, was proper and that the petition was not then "improvidently granted."

For the same reasons, a reasonably prompt decision by this court of that question was of importance not only to the City of Lake Oswego, but also to other cities considering the adoption of similar ordinances,[1] to LCDC in the discharge of its responsibility to enforce planning "goals" throughout the state, and to the home building industry. A prompt decision by this court of that question was of further importance because the Oregon legislature was then in session and remained in session for more than five months after this case was submitted for decision by this court. Thus, if this case had been decided promptly and within 60 days (the average time for decisions by appellate courts, according to ABA Standards for Appellate Courts),[2] there would have been time for either the cities, LCDC, The 1000 Friends of Oregon, the home building industry or other interested persons or organizations to seek changes by legislation in the event that such a decision by this court was unfavorable to them.

A vehicle for such changes was provided by HB 2225, which had already been introduced in the legislature prior to oral argument of this case and which was subsequently used to include many changes in laws relating to land use planning. HB 2225, after numerous public hearings, was enacted by the legislature as 1981 Oregon Laws, chapter 748. Indeed, another case involving important, but different, problems of land use planning, was submitted to this court for decision on March 3, 1981. The opinion in that case was written by a different member of this court, who expedited its preparation so as to make it possible for that case to be decided by this court on March 31, 1981. *See Oregon Business Planning Council v. LCDC,* 290 Or 741, 626 P2d 350 (1981). In my view, this court, by failing to

---

[1] The City of Beaverton, the City of Milwaukee and the City of Gresham were permitted to intervene as parties in proceedings before LCDC.

[2] *See Burlington Northern v. Dept. of Revenue,* 291 Or 729, 635 P2d 347 (1981), and cases cited therein.

decide this case until long after completion of that legislative session, failed to properly discharge its responsibility both to the parties and to the public.

To compound the problem, this court, after adjournment of the legislature, requested the parties to submit additional briefs in response to further questions raised by the court by letter addressed to all parties and to amicus curiae. In response to that request, lengthy briefs were filed by most of them. These included briefs filed by or on behalf of the State Housing Council and 1000 Friends of Oregon, the City of Lake Oswego, the Land Conservation and Development Commission and by the Home Builders Association of Metropolitan Portland. Yet this court now dismisses the petition for review without deciding either the questions raised by the original petition or the questions raised later by this court with its request for further briefs.

This court would justify the dismissal of this case by noting that since this case was submitted to it for decision on February 3, 1981, the legislature has enacted changes in the statutes which change the law on the issue presented for decision in this case. This rationale for dismissal of this case is reminiscent of the story of the old-time small-town lawyer who made it a practice never to answer letters which raised difficult problems, on the theory that if he waited long enough most of the problems would "go away," making answers unnecessary. Such a lawyer would now be subject to discipline by this court for neglect of the affairs of his clients. *See* DR 6-101(A)(3); *In re Kraus*, 289 Or 661, 616 P2d 1173 (1980), and *In re English*, 290 Or 113, 618 P2d 1275 (1980).

In my view, the dismissal of this case on these grounds is improper and in view of the trouble, expense and delay to which the parties to this case, including the intervening parties, have been subjected by this court, the parties are entitled to a decision by it on the merits of the issue upon which it granted the petition for review and, at the least, upon the merits of the questions raised later by the court with its request for further briefs.

For these reasons, I cannot subscribe to the dismissal of this case by this court, particularly when the

dismissal is by an anonymous "per curiam" opinion. The effect of the dismissal of the petition for review in this case is the same as the dismissal of a petition for review on the ground that it was "improvidently granted," as has previously been done by this court.[3] The petition for review in this case was not "improvidently granted." Instead, a decision by this court in this case was "improvidently delayed." As has been said before: "This is (no) way to run a railroad."[4]

---

[3] *See State v. Beason,* 289 Or 215, 611 P2d 1150 (1980), including dissenting opinion.

[4] *See* dissenting opinion in *McPherson v. Employment Division,* 285 Or 541, 557, 591 P2d 1381 (1979).