Argued and submitted January 3, motion to dismiss denied; affirmed February 6, reconsideration denied May 15, petition for review pending 1991

David L. DAVIS,
*Respondent,*

*v.*

CITY OF BANDON,
*Respondent.*

INDUSTRIAL SUPPLIES CO.
PROFIT SHARING TRUST,
Charles F. Larson and Rex Roberts,
*Petitioners,*

*v.*

CITY OF BANDON,
*Respondent.*

(LUBA 90-030 & 90-038; CA A67299)

805 P2d 709

Bill Kloos, Eugene, argued the cause and filed the brief for petitioners.

Mark Greenfield, Portland, argued the cause for respondent City of Bandon. With him on the brief was Preston Thorgrimson Shidler Gates & Ellis, Portland.

No appearance for respondent David L. Davis.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners own property in an 18-acre area, known as Coquille Point, in the city of Bandon. They seek review of LUBA's affirmance of a moratorium on residential development in the area, imposed by the city pursuant to ORS 197.505 *et seq.*[1] The area is planned and zoned for residential use but also contains valuable wildlife habitat and other significant resources. The city wants to acquire the area for park and related purposes and is attempting to obtain funding from the federal government and other sources for that objective.

ORS 197.520(3) provides, in part:

"A moratorium not based on a shortage of key facilities under subsection (2) of this section may be justified only by a demonstration of compelling need. Such a demonstration shall be based upon reasonably available information, and shall include, but need not be limited to, findings:

"(a)   That application of existing development ordinances or regulations and other applicable law is inadequate to prevent irrevocable public harm from residential development in affected geographical areas;

"* * * * *

"(c)   Stating the reasons alternative methods of achieving the objectives of the moratorium are unsatisfactory."

Petitioners argue in their first assignment that LUBA erred by "concluding that the city correctly found that existing city ordinances and regulations are inadequate to prevent irrevocable public harm" within the meaning of ORS 197.520(3)(a). LUBA said:

"[T]he city's findings express separate bases for the ultimate finding that the moratorium is necessary to prevent irrevocable public harm from residential development in the area. First, the city found that development would result in actual and irrevocable damage through destruction of vegetative cover and erosion on Coquille Point and through impacts on the offshore islands and rocks. Second, the city found that irrevocable public harm would result from residential development on the property by virtue of the strong likelihood that

---

[1] The city has imposed four successive moratoria. The one in question is the third. Petitioners contended before LUBA that the extensions of the moratorium do not comply with ORS 197.520(4). LUBA disagreed. Petitioners do not renew that contention here, and we do not address it.

current efforts to secure federal and state funding to purchase and develop the property for a public viewing area would be abandoned or unsuccessful if the city permitted additional residential development on the property under existing land use regulations.

"* * * * *

"Although we conclude the city's findings are inadequate to demonstrate that *any* residential development on Coquille Point necessarily would result in irrevocable harm to the natural resource values present on Coquille Point or on the offshore islands and rocks, we conclude the city's findings are adequate to establish that *any* additional residential development in the area, even if limited under existing regulations, would likely result in abandonment or rejection of current efforts to secure federal and state funding for a public park and viewing area. We also agree with the city's finding that abandonment of such efforts to purchase the property for a public park and marine wildlife viewing area or loss of such funding due to residential development under existing regulations would constitute irrevocable public harm.

"* * * * *

"In our view, the irrevocable public harm is the result of (1) the adverse effect such residential development would likely have on the city's ultimate goal of public purchase of the property for development of a park and interpretive center, and (2) the unusual suitability of the property for such purposes. While the caution exercised by the city in this case might not be warranted or supportable in all circumstances, we believe the city's approach is justified in this case." (Emphasis LUBA's; footnote omitted.)

Petitioners urge that the irrevocable public harm found by the city and approved as such by LUBA is neither irrevocable nor a public harm. As petitioners perceive matters, no loss of funding or of a park is involved here; rather, the city has simply made a policy choice to acquire the property and develop the park later instead of now and to maintain the current values of the property that it will later purchase.[2] Petitioners say:

"The park/interpretive center idea is a gleam in the city's eye. What the City and the public currently has and enjoys would not be affected. What may be affected are the city's hopes and

---

[2] No "taking" issue is presented in this case.

prospects for increasing public amenities **on the cheap.** There is no evidence whatsoever that anything the private landowners do cannot be undone without damage to the resource. There is, in short, not an iota of evidence that anything the private landowners do is irrevocable.

"The only question raised is whether the cost of undoing will affect future public policy decisions on whether to acquire the affected property. Such policy impacts are not public harm. Private landowners cannot be required to bear the costs of making it easier for the government to decide to take their property at some time in the future, and the legislature should not be presumed to have allowed or encouraged such a practice.

"\* \* \* \* \*

"The public harm the City and LUBA see is quite speculative. It is premised on the assumption that public funds may be appropriated for park acquisition in the future, since no funds have been appropriated yet. It is further premised on the assumption that approval of a single dwelling in the subject area would lead to an irrevocable withdrawal of public park funding. These connections are speculative to the point of straining common sense." (Emphasis petitioners'.)

Although petitioners are not required, for purposes of their argument, to accept the city's characterization of what it identifies as the public harm, their argument is more a caricature than a recharacterization. The city and LUBA defined the harm as the likely loss of necessary funding and the ultimate consequential loss of the opportunity to develop the park. There is nothing to substantiate petitioners' view that the harm the city sought to avoid is the loss of a favorable acquisition cost, although that might be an incidental benefit from protecting against the harm that the city did identify. *But see* note 2, *supra.*

The specifics of petitioners' argument aside, it rests on the premise that we can say, as a matter of law, that what the city has identified as a "public harm" in the case is not one. ORS 197.520(3) and the other moratorium statutes impose rigorous procedural and substantive tests, with which local governments must comply and which LUBA and the courts must enforce. Without doubt, some things or activities that a local government may designate as public harms may fall outside the reasonable contemplation of the statute and

therefore are subject to a possible decision by LUBA or by us that they cannot serve as a basis for a moratorium. However, the only reason that petitioners offer for concluding that there is no "public harm" here is their own vigorous disagreement with the city's conclusion that there is. The harm that the city has identified is a land use consequence of the proscribed development, and the city has found, in accordance with the statute, that its existing land use law is inadequate to prevent that consequence. There is simply no basis for us to decide that the city could not conclude that that constitutes a public harm.

Similarly, petitioners' contention that the harm is not irrevocable is derived from an incorrect premise. Petitioners posit that the city can escalate its acquisition plans at any time and that any building that takes place between now and the time of acquisition is reversible; hence, there are no irrevocable difficulties. However, the irrevocable problem that the city and LUBA found is that the existence of new development is likely to deter permanently the funding necessary for acquisition. In short, petitioners' arguments concerning "public harm" and irrevocability are targeted at straw men of petitioners' making, and they do not come to terms with what the city did, let alone show error in what it did.

Petitioners also argue under their first assignment that LUBA erred by concluding:

"The city's findings point out that without a moratorium, applications for approval of single family dwellings could be submitted at any time; and, if such applications were submitted, they would have to be reviewed against the existing plan and land use regulations. *See* ORS 227.178(3); *Kirpal Light Satsang v. Douglas County,* 96 Or App 207, 772 P2d 944, *adhered to* 97 Or App 614, [776 P2d 1312,] *rev den* 308 Or 382 (1989)."

According to petitioners:

"Without a moratorium the City would have to process applications for residences west of Portland Ave. under the fully acknowledged zoning and the protective provisions that come with it. The City could not change the applicable review standards after an application was filed but before it was processed. ORS 227.178(3) protects property owners under acknowledged plans. The city used the moratorium to defeat this statute.

"The City saw the risk of irreparable harm in the application of this statute. The final reference to irrevocable public harm in the city's order is at page 9, par 2. There the City finds 'the moratorium is necessary to avoid application of ORS 227.178.'

"Petitioner submits that, as a matter of law, irrevocable public harm cannot be found in the application of a statute for the purpose for which the statute was intended — to insure that local governments do not change the rules on applicants after they see the applications."

That argument loses sight of the essential purpose of the moratorium statutes—that, under exceptional circumstances, existing laws and regulations can be inadequate, and a mechanism must exist to prevent their application for limited periods of time to prevent irrevocable harm. For the same reason, we also reject the various arguments that petitioners make to the effect that the city is using the moratorium to circumvent its acknowledged land use legislation and that the "moratorium statute is not intended to give local governments a vacation from compliance with their acknowledged land use regulations every time they have second thoughts about the commitments those regulations embody." We agree with petitioners that the moratorium procedure was intended to be used rarely and under the rigid safeguards in the statute. However, we agree with the city that the legislature did not intend that the procedure *never* be used. Petitioners have not demonstrated that this was an improper occasion for its use.

Petitioners' final point in support of their first assignment is that the finding of an adverse effect on the "ultimate goal of purchase for park purposes" is not supported by substantial evidence. We reject that argument without discussion.

Petitioners' second assignment is that LUBA erroneously concluded that the local findings adequately stated the "reasons alternative methods of achieving the objectives of the moratorium are unsatisfactory." ORS 197.520(3)(c). Specifically, petitioners contend that the city did not demonstrate that it could not have acquired the property now or soon with existing or obtainable funds. Petitioners state:

"The statute requires findings on this alternative. The City states in its brief that '[c]ity purchase was not a reasonable or available option.' The City made no such finding and all evidence in the record is to the contrary. LUBA found the City lacked purchase funds. The City made no such finding. So long as a city like Bandon has an annual operating budget and the authority to raise funds through bond issues, neither the City nor LUBA can make such a finding and support it with substantial evidence."

LUBA rejected that argument and explained:

"[I]t was never the city's plan to purchase and develop the property solely with city funds, and the city lacks funds to purchase the property.[16]

---

"[16] Although the city did not explicitly find that it lacked funds of its own to purchase the property, its findings read as a whole make it clear that it does not have such funds and for that reason is attempting to secure funds from state and federal sources."

We agree. More fundamentally, ORS 197.520(3)(c) does not say, or even suggest, that the findings that it requires must address *every* method that *anyone* considers to be an alternative. Contrary to the assertion that runs throughout petitioners' arguments, the city is not required to choose either to use its own funds to purchase Coquille Point or to abandon its policy of protecting the resources there. The land use laws do not often bear on the procurement and allocation of governmental funds among programs, and they have no appropriate bearing of the kind suggested by petitioners here. *Cf. Housing Council v. City of Lake Oswego*, 48 Or App 525, 538, 617 P2d 655 (1980), *rev dismissed* 291 Or 878, 635 P2d 647 (1981) ("We think the legislature created LCDC to be part of the state government, not to be the state government"). The city was not obliged to make a finding that it could not pursue an alternative that would have amounted to a very different policy decision from the one that it made. That is not the kind of alternative contemplated by ORS 197.520(3)(c).

Petitioners' third assignment ascribes error to LUBA's conclusion that the city demonstrated a compelling need for the moratorium, as ORS 197.520 requires. Many of the points that petitioners make to support that assignment

have been answered elsewhere in this opinion, and the other points do not require discussion.

The city has moved to dismiss the petition for judicial review, because service on the Attorney General was untimely. The motion is denied. *See East McAndrews Neighborhood v. City of Medford,* 104 Or App 280, 800 P2d 308 (1990).

Motion to dismiss denied; affirmed.