Submitted May 18, reversed October 8, 1979

# JURGENSON,
*Respondent,*
*v.*
# COUNTY COURT FOR UNION COUNTY
*Appellants.*
## (No. E 24793, CA 11988)
600 P2d 1241

D. Dale Mammen, District Attorney, La Grande, filed the brief for appellants.

Steven J. Joseph, La Grande, waived appearance for respondent.

Before Schwab, Chief Judge, and Lee, Gillette and Campbell, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Petitioner applied to partition a parcel of 33.38 acres into three approximately equal lots. The county court denied the request to partition. Petitioner then initiated this writ of review proceeding. The trial court reversed the county's decision. The county appealed. We reverse the trial court and reinstate the county's decision.

The questions presented are whether the Statewide Planning Goals, OAR 660-15-000, Appendix A, apply to requests to partition land, and, if so, whether there was substantial evidence to support the county's conclusion that granting petitioner's requested partitioning would be inconsistent with Goal 3. We answer both questions in the affirmative.

### I

State statutes distinguish between to "partition land" and to "subdivide land." To subdivide land means to divide a parcel into four or more lots. ORS 92.010(12). To partition land means to divide a parcel into two or three lots. ORS 92.010(8). The statutes draw a further distinction between a "major partition," which includes the creation of a road or street, and a "minor partition," which does not include the creation of a road or street. ORS 92.010(2) and (4).

We have previously held that the Statewide Planning Goals are applicable to local approval or denial of a proposed subdivision of land. *Meeker v. Board of Comm'rs,* 36 Or App 699, 585 P2d 1138 (1978), *rev allowed* (1979); *1000 Friends v. Benton County,* 32 Or App 413, 575 P2d 651, *rev den,* 284 Or 41, 584 P2d 1371 (1978). The question is whether the goals also apply to a proposed partition of land.

The statutes defining what the goals apply to are rather general. First, ORS 197.175(1) provides: "Cities and counties shall exercise their planning and zoning responsibilities * * * in accordance with * * * the statewide planning goals * * *." Second, ORS 197.225 provides that the Statewide Planning Goals shall be used

by local governments "in preparing, adopting, revising and implementing existing and future comprehensive plans." Third, ORS 197.250 provides that city and county ordinances adopted "to carry out such [comprehensive] plans * * * shall be in conformity with the state-wide planning goals * * *." Fourth, ORS 197.300(1)(b) contemplates that any "land conservation and development action" has to comply with the Statewide Planning Goals. The question is whether, in considering a requested partition of land, a local government is proceeding under one or more of these statutes.

In *Petersen v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977), the court held "planning and zoning responsibilities," ORS 197.175(1), included annexations. The Supreme Court stated:

"* * * [T]he exercise of 'planning and zoning responsibilities' must be read to refer not only to the preparation of comprehensive plans and the enactment of zoning and other ordinances to implement those plans but also to other local planning activities which will have a *significant impact* on present or future land uses, such as the decision to extend city boundaries by annexation." 279 Or at 253-54. (Emphasis supplied.)

■ Viewed in isolation, it is likely that no single partitioning has a significant impact on present or future land use; viewed cumulatively, it is likely that all partitionings in a given county have a significant impact on present or future land use. It would be an elevation of form over substance not to look to cumulative impact. Approval of a 30-lot subdivision is subject to the Statewide Planning Goals. *1000 Friends v. Benton County, supra.* Approval of ten separate requests to partition parcels into three new lots has substantially, if not exactly, the same impact on availability of housing, crowding in schools, traffic and all the other considerations germane to land-use planning. We conclude that partitioning decisions must comply with the goals.

Moreover, approval or denial of partitioning requests can be a form of implementation of a comprehensive plan within the meaning of ORS 197.225 and 197.250. ORS 92.044(6), applicable to local ordinances regulating subdivisions and major partitions, and ORS 92.046(6), applicable to local ordinances regulating minor partitions, are identical:

> "Any ordinance or regulation adopted under this section shall comply with the comprehensive plan for the city or county adopting the ordinance or regulation."

Given that the legislature has required local ordinances regulating all forms of partitions to comply with the local comprehensive plan, we think it follows that ordinances setting out rules governing partitioning implement and carry out the comprehensive plan within the meaning of ORS 197.225 and 197.250. It thus further follows that the terms of such ordinances must comply with the Statewide Planning Goals.

It would be somewhat incongruous to state that local legislation governing partitions generally must comply with the goals, but that specific application of such ordinances need not comply with the goals. Although local governments have been allowed time to bring their land-use legislation into compliance with the goals, ORS 197.250 and 197.251(2), and their existing land-use legislation remains in force until revised, ORS 197.275, one basic thrust of ORS ch 197 is that specific land-use decisions during this transition period must be consistent with the goals. ORS 197.300(1)(b); *South of Sunnyside v. Clackamas County Comm.*, 280 Or 3, 569 P2d 1063 (1977).

For all of these reasons, we hold the county was correct to apply the Statewide Planning Goals to this partition request.

## II

The county denied the requested partition on the ground that it was inconsistent with Goal 3, which concerns preservation of agricultural land. The circuit

court ruled there was no substantial evidence to support the county's decision.

■ When a local government has denied a requested land-use change, the concept of reviewing for substantial evidence to sustain the denial presents difficulties. *See, Wes Linn Land Co. v. Bd. of County Comm'rs,* 36 Or App 39, 583 P2d 1159 (1978); *Marracci v. City of Scappoose,* 26 Or App 131, 552 P2d 552, *rev den* (1976); *Dickinson v. Bd. of County Comm.,* 21 Or App 98, 533 P2d 1395 (1975). In a local land-use proceeding the proponent of change has the burden of proof. *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973). Could not a local government deny a land-use change on the sole basis that the proponent did not sustain his burden of proof because his evidence was not credible? If so, in what sense would we be expected to say that the denial was supported by substantial evidence?

To draw an analogy, in a personal injury case the plaintiff, who has the burden of proof, might present evidence of the defendant's negligence. The defendant could rest without presenting any evidence. The jury could return a verdict for the defendant. It would be passing strange for an appellate court to reverse such a verdict as not supported by substantial evidence on the ground that the party who did not have the burden of proof presented no evidence. Instead, the normal appellate approach in such a situation would be to affirm a verdict adverse to the party with the burden of proof unless the court could say that party sustained his burden as a matter of law.

■ We perceive no reason why a local decision denying a requested land-use change should be treated differently. In other words, a denial is supported by substantial evidence within the meaning of ORS 34.040(3) unless the reviewing court can say that the proponent of change sustained his burden of proof as a matter of law.

[510]

Proceeding on that understanding of our scope of review, we turn to the merits. Statewide Planning Goal 3 is intended to "preserve and maintain agricultural lands." It defines agricultural land, in part, as:

"* * * in western Oregon * * * land of predominantly Class I, II, III and IV soils and in eastern Oregon * * * land of predominantly Class I, II, III, IV, V and VI soils as identified in the Soil Capacity Classification System of the United States Soil Conservation Service * * *."

Such lands "shall be preserved and maintained for farm use" and "minimum lot sizes * * * shall be appropriate for the continuation of the existing commercial agricultural enterprise within the area."

In order to satisfy Goal 3, an owner seeking to partition land has the burden of proving: (1) the predominant soil classes on the property are other than agricultural land within the Goal 3 definition, *see Meyer v. Lord,* 37 Or App 59, 586 P2d 367 (1978), *rev den* 286 Or 303 (1979); or (2) the lot sizes created by the partition will be sufficient for the continuation of the existing agricultural enterprise in the area; or (3) the factors set out in ORS 215.213, and incorporated by reference into Goal 3, relevant to permitting non-farm uses—usually meaning residential use—on agricultural land are met, *see Rutherford v. Armstrong,* 31 Or App 1319, 572 P2d 1331 (1977), *rev den* 281 Or 431 (1978).

The county's findings include:

"* * * * *

"(3) Petitioner's land consists of approximately four acres of Class IV soil, twenty acres of Class VI soil and ten acres of Class VII soil * * *.

"* * * * *

"(6) That there are no other parcels of land in close proximity to this proposed division which are close to ten acres. There is an 18.5 acre parcel approximately one-half mile from the proposed division.

"(7) The proposed division is immediately adjacent to the agricultural A-1 Zone which requires a minimum of 40 acres minimum ownership.

"* * * * *."

Finding number 3 in effect states that a predominant part of the subject property consists of Class I to VI soils, *i.e.*, about 24 acres of about 34 acres. Findings number 6 and 7 at least strongly imply that the county did not regard the proposed ten-acre lots to be appropriate for the continuation of agricultural activity in the area.

The circuit court found:

> "* * * only four (4) acres of [the subject property] are even Class 4 land with the remainder not suited to cultivation. * * *
>
> "Certainly, there can be no justification in the [county's] denial based on preservation of prime agricultural land in accordance with LCDC Goal 3. Prime land, it is not."

This finding indicates that the court misunderstood both its role and the relevant law.

In a writ of review proceeding, the court's role is ordinarily limited to review of the record. The court is not entitled to make independent findings of fact on issues that were presented to the local government. *Bienz v. City of Dayton*, 29 Or App 761, 566 P2d 904, *rev den* (1977). The circuit court's comments about whether the subject property is prime farm land and whether it can be cultivated transcend its authority.

As for the relevant law, we are aware that Goal 3 is often paraphrased as being concerned with *prime* farm land; however, the term "prime" does not appear anywhere in the text of Statewide Planning Goal 3. Nor is there any reference to whether property can be cultivated. The Land Conservation and Development Commission has determined, pursuant to a grant of authority from the legislature, that Class I to IV soils (in western Oregon) and Class I to VI soils (in eastern Oregon) should generally be preserved for agricultural use. That is the relevant law; it matters not whether a local government, a circuit court or this court regards a given piece of property as "prime" farm land so long as it contains the types of soil defined as agricultural land in Goal 3.

There is no evidence that the property here in question contains other than a predominance of agricultural land within the meaning of Goal 3. There is absolutely no evidence that the proposed division of about 34 acres into three lots would create lots of sufficient size as to be consistent with the existing agricultural operations in the area. There is no evidence relevant to most of the conditional use standards in ORS 215.213. Consistent with our scope of review set out above, we cannot say that the proponent of this partitioning sustained his burden of proof as a matter of law.

Reversed.