Argued and submitted November 12, 1980, affirmed February 17, reconsideration denied March 26, petition for review denied May 19, 1981 (291 Or 9)

COLUMBIA HILLS DEVELOPMENT COMPANY et al,
*Petitioners,*

*v.*

LAND CONSERVATION AND DEVELOPMENT COMMISSION,
*Respondent,*

*and*

1000 FRIENDS OF OREGON,
*Intervenor-Respondent.*

HOME BUILDERS ASSOCIATION OF METROPOLITAN PORTLAND,
*Petitioner,*

*v.*

CITY OF SCAPPOOSE et al,
*Respondents.*

BOARD OF COUNTY COMMISSIONERS OF COLUMBIA COUNTY,
*Petitioners,*

*v.*

LAND CONSERVATION AND DEVELOPMENT COMMISSION,
*Respondent.*

(Cases Consolidated)
(No. 79-043, CA 17559, CA 17649, CA 17867)

624 P2d 157

Steven R. Schell, Portland, argued the cause for petitioners, Columbia Hills Development Company, Anna L. Bright and Carl Smith, Murdo J. McGregor and Evelyn M. McGregor, Leo H. Halter and Ellen Marie Halter, Forrest E. Putnam, Kenneth O. kramer and Dora C. Kramer, Melvin F. Dersham and Vivian Dersham, Joseph Schweigert, Esther M. Odden and Adele Odden, Wilford L.

Steele, Joseph I. Lundquist, E. C. Moore and L. Greenfield, Dorris L. Green, M. D. Allison and Dorothy D. Allison, George H. Liggett and Angelina Liggett, Vernon E. McKinnis and Jean McKinnis, Cornelius R. Fast and Dorothy L. Fast, Oliver Hughes and Waunita M. Hughes, Ella J. Powell, Richard A. Class, Earl V. Erickson and Mildren E. Erickson, Veda R. Force, Robert F. Greiner and Henrietta Griener, C. R. Hause and Ruth A. Hause, Longview AMC--Jeep-Mazda, Inc., Robert Russell Loyd and Dorotha N. Loyd, H. E. Prickett and Jessie Prickett, A. E. Reichow and S. Reichow, W. J. Miller and L. Steinberg and K. Steinberg, John J. West and Delilah West, Emily L. Norton, Clifford A. Applegate and Anna M. Applegate, Parker G. Copley and Ruth E. Copley, Earl Seawright and Jeanne Seawright, Walter Thompson and Vivian Thompson, Burl G. Burton and Marian S. Burton, Anna E. Nix, Bert E. Teats and Alice M. Teats, Willard K. Meserve, Max E. Smith and Rowena B. Smith, Tom A. Warren and Dorothy M. Warren, Edwin Y. Chen and Jessie Chen, Ada Rupprecht, John W. Welsh and Helen Welsh, Charles C. Allred and Erlene V. Allred, Martha I. Ulmer, The Trans-West Company of Oregon, John Baumiller, Edna M. Billings, George H. Buckley, Doris M. Shaw, William L. McKibbin, Robert T. Smith, Clarence W. Doane and Daisy M. Doane, Kenneth Cook and Margaret E. Cook, Edward J. Bushman, Conservator for Hazel M. Merlevede, Barbara Lee York, Esther M. Ames, Alfred A. Lundquist and Jane E. Lundquist, Lawrence A. Eppstein, V. C. Crop and Mildred M. Crop, Gladys C. Bryant, Hollis N. Cox and Sally L. Cox, Wallace Gervais, Joern M. Wiese and Ruth W. Wiese. With him on the brief was Black, Helterline, Beck and Rappleyea, Portland.

Diane W. Spies, Portland, argued the cause and filed the brief for petitioners Board of County Commissioners of Columbia County.

Kevin L. Hanway, Portland, argued the cause and filed the brief for petitioner, Home Builders Association of Metropolitan Portland.

Robert E. Stacey, Jr., argued the cause and filed the brief for intervenor-respondent.

David G. Frost, Hillsboro, argued the cause for respondents, Publishers Paper Company and Crown Zellerbach. With him on the brief was Frost & Hall, Hillsboro.

David B. Williamson, St. Helens, argued the cause for respondent, City of Scappoose. With him on the brief was Williamson & Williamson, St. Helens.

Scott H. Parker and Michael E. Judd, Oregon City, filed a brief amici curiae for Clackamas County and Association of Oregon Counties.

Al J. Laue, Assistant Attorney General, Salem, waived appearance for respondent, Land Conservation and Development Commission, Department of Land Conservation and Development, W. J. Kvarsten, Director.

No appearance for respondent, Oregon State Department of Forestry.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This case consolidates three petitions for review from an order of the Land Conservation and Development Commission (LCDC) which determined that three building permits issued by Columbia County were invalid. Two issues are raised. The first concerns the jurisdiction of LCDC to review the issuance of these building permits. The determination of that issue depends upon whether the issuance of the building permits in the circumstances involved here constituted a "land conservation and development action" as that term is used in ORS ch 197.[1] If LCDC had jurisdiction to review these building permits, petitioners challenge the correctness of LCDC's determination on the merits. We affirm.

On August 1, 1979, Columbia County issued building permits for single family residences on three parcels in the Hillcrest Subdivision. That subdivision of approximately 1100 lots was platted and recorded in 1957. Just over 200 of the lots have been sold to individuals; Portland General Electric owns 60 of the lots, on which it has power lines; the remainder are owned by Trans-West Company of Oregon and Columbia Hills Development Company. The latter is the applicant for the building permits at issue here. The lots average 7,000 to 10,000 square feet. The parcels for which the building permits were issued each contain 3 or 4 lots, that combination of lots being required for approval of septic tanks and drain fields. There is a county road which provides access to each of the three parcels; there are other roads in the subdivision which are passable only part of the year. No homes have yet been built in the subdivision, and there are few homes in the surrounding area.

The land in question is forest land and is currently not zoned. Columbia County has no acknowledged comprehensive plan. *See* ORS 197.250. An Enforcement Order was issued on April 10, 1979, by LCDC pursuant to ORS

---

[1] In 1979, this section was replaced by the authority of the newly established Land Use Board of Appeals to review "land use decisions." Or Laws 1979 ch 772 §§ 1-6a, 26. Former ORS 197.300(1)(b) applies to this case by virtue of the fact that this case began prior to the effective date of the new statutes.

197.320,[2] requiring that the county take steps to protect its agricultural and forest lands pending acknowledgment of its comprehensive plan. The Order required that the county apply Goals 3 (agricultural lands) and 4 (forest lands) to land use actions involving those types of lands. "Land use action" was defined to include the issuance of building permits. The county thereafter adopted procedures for handling applications for building permits. Those procedures required approval by the Board of Commissioners after review by the Planning Commission, but did not require a formal hearing or notice to those who might be affected. The procedures adopted by the county in response to the enforcement order were those employed in the issuance of these building permits. The validity of the Enforcement Order is not at issue here.

---

[2] ORS 197.320 provides in part:

"(1) The commission shall issue an order requiring a city, county, state agency or special district to take action necessary to bring its comprehensive plan or zoning, subdivision or other ordinance, regulation, plan or program into conformity with the state-wide planning goals if the commission has good cause to believe:

"(a) A comprehensive plan, or zoning, subdivision or other ordinance or regulation adopted by a city, county not on a compliance schedule is not in conformity with the state-wide planning goals by the date set in ORS 197.250 for such conformity; or

"(b) A plan, program or regulation affecting land use adopted by a state agency or special district is not in conformity with the state-wide planning goals by the date set in ORS 197.250 for such conformity; or

"(c) A city or county is not making satisfactory progress toward performance of its compliance schedule; or

"(d) A state agency is not making satisfactory progress in carrying out its coordination agreement or the requirements of ORS 197.180; or

"(e) A city or county has no comprehensive plan, or zoning, subdivision or other ordinance or regulation and is not on a compliance schedule directed to developing such plans, ordinances or regulations;

"(2) An order issued under subsection (1) of this section and the copy of the order mailed to the city, county, state agency or special district shall set forth:

"(a) The nature of the noncompliance, including but not limited to the contents of the comprehensive plan, zoning, subdivision or other ordinance or regulation, if any, of a city or county that do not comply with state-wide planning goals or the contents of a plan, program or regulation affecting land use adopted by a state agency or special district that do not comply with state-wide planning goals;

## JURISDICTION

The county is required to adopt a comprehensive plan and implementing ordinances which comply with the state-wide planning goals. ORS 215.050. LCDC determines compliance with the state-wide goals pursuant to procedures established in ORS 197.251. After acknowledgement of compliance by LCDC, the state-wide planning goals will ordinarily apply to county "land conservation and development actions" only through the comprehensive plan and implementing ordinances. ORS 197.275(2). Before acknowledgement, however, the goals apply directly to "land conservation and development actions," *Alexanderson v. Polk County Commissioners,* 289 Or 427, 616 P2d 459 (1980); *Jurgenson v. Union County Court,* 42 Or App 505, 600 P2d 1241 (1979), and LCDC was authorized to review any "land conservation and development action" alleged to conflict with the state-wide goals under former ORS 197.300(1)(b):[3]

"(1)  In the manner provided in ORS 197.305 to 197.315, the commission shall review upon:

"* * * * *

"(b)  Petition by a city, county, special district governing body, or state agency, a land conservation and development action taken by a state agency, city, county or special district that the governing body or state agency considers to be in conflict with state-wide planning goals approved under ORS 197.240."

The dispute between these parties centers on whether the issuance of these building permits was a "land conservation and development action" as that term is used

---

"(b) The specific lands, if any, within a city or county for which the existing plan, ordinance or regulation, if any, do not comply with the state-wide goals; and

"(c) The corrective action decided upon by the commission, including the specific requirements, with which the city, county, state agency or special district must comply."

[3] The City of Scappoose sought LCDC of the county's action review pursuant to ORS 197.300(1)(b). Columbia Hills Development Company, 113 lot owners, Publishers Paper Company, Crown Zellerbach, 1000 Friends of Oregon, Home Builders Association of Metropolitan Portland, and the Department of Forestry were granted leave to intervene in that proceeding as petitioners, respondents or non-aligned parties. Columbia Hills, the Home Builders Association and the Columbia County Board of Commissioners then sought review of the LCDC action by this court.

in the statute. The parties have analyzed the statutes and case law and argued both sides of the question of whether the issuance of building permits *in general* is a land conservation and development action. We believe, however, that the issue presented here is much narrower.

The particular facts here present a situation in which building permits were issued for parcels in an area of rural forest land which is undeveloped,[4] which has not been zoned and which is not subject to an acknowledged comprehensive plan. The only prior land use decision which has arguably been made regarding these parcels is the recording of the plat, which occurred in 1957. Petitioners argue that the recording of the plat entitles the landowner to use the land for what was obviously the intended purpose, given the lot sizes, at the time the plat was recorded, *viz.*, for residential purposes.

■  There is, however, no such entitlement. The county could adopt a comprehensive plan and zoning ordinances designating the permissible uses of the land without regard to the fact that there was a plat recorded in 1957. In *Pohrman v. Klamath County Comm.,* 25 Or App 613, 550 P2d 1236 (1976), we held that, even assuming that a subdivision is an existing use,

"[z]oning is not merely a catalog of existing uses; it is a legislative judgment based on numerous standards about what future uses of property will, or will not, be in the public interest. There is no such thing as a 'right' to have a zone conform to an existing use." 25 Or App at 619.

■  It is true that ORS 215.130(5) provides that:

"(5)   The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. * * *"

However, platted but undeveloped land is not normally regarded as a "use" in zoning law for purposes of establishing a prior non-conforming use. *Parks v. Tillamook Co. Comm./Spliid,* 11 Or App 177, 196, 501 P2d 85 (1972). The landowners, therefore, have no absolute right to make the

---

[4] We use the term "undeveloped" in a general sense and not with reference to ORS 92.205 to 92.245, which establishes a procedure for vacation of undeveloped subdivisions. As that term is used in those statutory sections, this subdivision is "developed," if only because lots have been sold.

particular use of the parcel involved here which they wish to make. *See League of Women Voters v. Paulus,* 287 or 509, 601 P2d 763 (1979); *Pohrman v. Klamath County Comm., supra.*

Although the land in question has been platted, the county had made no binding decisions as to the permitted uses of that land until the issuance of these building permits.[5] Construction of the three houses allowed by these building permits would, however, commit those three parcels to residential use and would inevitably have a substantial impact on future decisions regarding construction in the subdivision.[6]

■ ■ We stated in *Culver v. Dagg,* 20 Or App 647, 653, 532 P2d 1127 (1975), that "Zoning determines the permissible uses of land." Although building permits may generally be used to *enforce* zoning ordinances, *see Parks v. Tillamook Co. Comm./Spliid, supra,* where, as here, there is no zoning in effect, the issuance of building permits determines the permissible uses of land for which no previous decisions as to use have been made. In this context, then, the issuance of a building permit is a "land conservation and development action" and LCDC was correct in asserting jurisdiction to review the issuance of the permits for compliance with the state-wide planning goals.

## THE MERITS

■ On the merits, LCDC found that two issues had been raised: (1) whether the county's findings adequately

[5] Petitioners argue that, under *Bienz v. City of Dayton,* 29 Or App 761, 566 P2d 904 (1977), the approval of the plat is binding on the county for future construction and use as residential property. We do not find *Bienz* to be dispositive here. Petitioners do not contend that each lot owner must be allowed to build one residence on each lot in the subdivision. As noted above, two of the parcels at issue here required 4 lots and one parcel required 3 lots in order to obtain approval of septic tanks and drain fields. Just as recording of the plat did not do away with the necessity for meeting septic system requirements, so, too, it did not do away with the necessity for meeting land use requirements in effect at the time construction is contemplated. The application of Goal 4 to the decision on use of the parcels is no more excused by recording of the plat than is application of septic system requirements. *Bienz* does not mean that, once a subdivision has been platted and recorded, all land use regulations in effect at the time that construction is ready to begin may be ignored.

[6] One question raised and not fully answered during the deliberations on these building permits was the extent of the commitment being made by the county in the issuance of the permits. Whatever commitment the Board of Commissioners believed it was making, it is clear that construction of three houses in the Hillcrest Subdivision will affect future decisions on requests to build in the area.

supported its decision to issue the permits; and (2) whether the findings are supported by substantial evidence in view of the fact that the county failed to subject the applications to a public hearing. LCDC found the building permits were invalid because the county's "procedures, administrative record and findings were legally inadequate."

The parties stipulated before LCDC that no public notice was given in advance of the county's proceedings on the permit applications. An informal hearing was conducted before the County Commissioners in which the attorney for the permit applicant answered questions. There was no formal presentation of evidence. The one opponent of the permits who was present was allowed to ask some questions. We find these procedures inadequate.

■ Petitioners argue that the issuance of building permits is a ministerial function that does not require the procedures for the performance of quasi-judicial functions. Although the issuance of building permits might, under other circumstances, be a ministerial act, *see Parks v. Tillamook Co. Comm./Spliid, supra,* where, as here, the issuance of a building permit is in fact a zoning decision, more than a ministerial function in involved.

■ Although this action by the county is not actually a *change* of zoning, like that held to be quasi-judicial in *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), it fits more closely with the exercise of quasi-judicial than legislative authority. *See Neuberger v. City of Portland,* 288 Or 155, 603 P2d 771 (1979); *Strawberry Hill 4-Wheelers v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979). Procedures which provide the kind of opportunity to be heard, to present and rebut evidence, to an impartial tribunal and to a record made and adequate findings executed, required for the exercise of quasi-judicial functions, *see Fasano v. Washington Co. Comm., supra,* were necessary before issuance of these building permits by the county. Those procedures were not provided. LCDC was entitled to conclude that the county's procedures were inadequate and that, for that reason, the issuance of the building permits must be invalidated.

Affirmed.