Argued and submitted September 21, 1981, affirmed April 12,
reconsideration denied May 13,
petition for review allowed June 29, 1982 (293 Or 340)

# CITY OF PENDLETON et al,
*Petitioners,*

*v.*

# KERNS et al,
*Respondents.*

## (No. 80-138, CA A20422)

643 P2d 658

Rudy M. Murgo, City Attorney, Pendleton, argued the cause for petitioner City of Pendleton. With him on the brief were William J. Storie and Storie and Gallaher, Pendleton, attorneys for petitioners Fredrick S. and Mary Ann Hill.

William J. Storie, Pendleton, argued the cause for petitioners Fredrick S. Hill and Mary Ann Hill. With him on the brief were Storie and Gallaher and Rudy M. Murgo, City Attorney, Pendleton, attorney for petitioner City of Pendleton.

Thomas R. Page, Portland, argued the cause for respondents. With him on the brief were Stephen T. Janik and Stoel, Rives, Boley, Fraser and Wyse, Portland.

Before Gillette, Presiding Judge, Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

Petitioners appeal from a final opinion and order issued by the Land Use Board of Appeals (LUBA) that remanded Pendleton City Ordinance No. 3141 (the ordinance) to the city and directed the city to adopt appropriate findings. Petitioners argue that LUBA lacked jurisdiction over the ordinance in that the ordinance is not a "land use decision," that the respondents did not have standing to appeal to LUBA, and that certain aspects of Oregon land use law are unconstitutional. We affirm.

On September 16, 1980, the City of Pendleton passed Ordinance No. 3141, titled: "An ordinance creating street and water local improvement district number 393, authorizing call for bids, providing for liens, and declaring an emergency." The ordinance stated that certain designated lots within the City of Pendleton, in Improvement District Number 393:

"Shall be and [are] hereby ordained to be improved by construction of a street with curbs, gutter, sidewalks, storm sewer and water in accordance with preliminary plans and outline specifications thereof * * *."

The ordinance also states:

"Section 9. The cost of making the improvement shall be a lien and a charge upon all lots specifically benefitted by the improvement proportionally * * *."

In essence, the ordinance authorizes the extension of North Main Steet for a distance of approximately 310 feet. North Main Street, including the proposed extension, has been dedicated as a street since at least March 4, 1915, although the segment of the street designated for extension has never been improved. Since 1958, that segment has been used as a neighborhood park.

On October 14, 1980, all of the respondents filed a notice of intent to appeal the enactment of the ordinance to LUBA. Their petition for review to LUBA, dated November 21, 1980, alleges that the ordinance authorizes construction of a street and water main through their neighborhood, that passage of the ordinance violates LCDC Goals 1, 2, 3, 5, 11, 12 and 14, and that the city failed to consider those goals in its decision to pass the ordinance. Respondent Wagner also

filed an action for declaratory relief in the Umatilla County Circuit Court challenging the local improvement district method of financing the improvements.

LUBA held that respondents Jean H. Kerns and Levy lacked standing to appeal this matter, but that respondents F. Carter Kerns and Wagner did have standing to appeal. LUBA also found that it had jurisdiction over the appeal. It concluded that:

"Ordinance No. 3141 contains no findings addressing the City's Comprehensive Plan or the applicable state-wide Planning Goals. Ordinance No. 3141 must be remanded to the City in order that appropriate findings be adopted."

Petitioners first assign error to LUBA's denial of their motion to dismiss for lack of jurisdiction. Or Laws 1979, ch 772, § 4, then in effect, provided that LUBA "* * * shall have exclusive jurisdiction to review any land use decision of a city * * *."[1] Or Laws 1979, ch 772, § 3, stated that, for the purposes of section 4:

"(1)    'Land use decision' means

"(a)    A final decision or determination made by a city * * * that concerns the adoption, amendment or application of:

"(A)    The state-wide planning goals;

"(B)    A comprehensive plan provision; * * *."

"* * * * * *"[2]

The central issue in this assignment of error is whether the city's decision to extend the street is a "land use decision."

In their petition for review to LUBA, respondents alleged that the decision to extend the street violated both the statewide planning goals and the city's comprehensive plan.[3] They also alleged that the proposed extension would occupy vacant land that nearby residents had used as a neighborhood park and recreational area since at least

---

[1] Or Laws 1979, ch 772, § 4 was reenacted as amended by Or Laws 1981, ch 748, § 35. The relevant portion now provides that LUBA "* * * shall have exclusive jurisdiction to review any land use decision of a local government * * *."

[2] An amended definition of "land use decision," not applicable to this decision, is now codified in ORS 197.015(10). Or Laws 1981, ch 748, § 1.

[3] Pendleton did not have an acknowledged comprehensive plan during the time relevant to this litigation. If its plan had been acknowledged, the statewide goals would have applied to this decision only through the acknowledged comprehensive plan. See ORS 197.275(2).

1958. LUBA summarized additional jurisdictional facts in its final order as follows:

> "The extension of the street will open up for development lots within the city which presently have no access available. In addition, a major purpose of the road extension is to facilitate development of an area which adjoins the city limits and which was the subject of an annexation proceeding to the City of Pendleton reviewed by this Board in *Kerns v. City of Pendleton,* 1 Or LUBA 1 (1980). Extension of North Main Street as authorized by this ordinance will not only facilitate development of the Hill property which adjoins the city but also development of the proposed Owens Addition, a subdivision of some 75 to 85 lots which is presently within the city limits but cannot be developed due to a lack of access to the city. That access will be provided if North Main Street is extended as authorized by this ordinance and if the Hill property is developed. Development of the Hill property will result in an extension of North Main Street through the Hill property to the Owens Addition.

> "Thus, as can be seen from the above, this ordinance not only authorizes construction of a street and the immediate development of lots bordering on the street but goes a long way toward the future development of many additional lots."

■     The proposed extension affects land being used for recreational purposes and further development of nearby land. An examination of the statewide goals leads us to agree with LUBA that the proposed street extension therefore involves application of those goals. Goal 2 concerns such site and area specific implementation measures as "The construction of public facilities (* * * roads, water lines, etc)." *See* Goal 2, Guideline 6. Goal 11 deals with "planning, zoning and subdivision control" and with "recreational facilities." The guidelines to Goal 14 direct consideration of "the type, location and phasing of public facilities and services." *See* Goal 14, Guideline B(1). The decision to extend the street in this case involved application of the statewide planning goals; LUBA therefore had jurisdiction over the decision.[4]

---

[4] Petitioners find some significance in the fact that the area of proposed extension was earlier dedicated as part of North Main Street. We are not bound by that fact. *See Columbia Hills v. LCDC,* 50 Or App 483, 624 P2d 157 (1981)

■    The city argues alternatively that LUBA does not have jurisdiction in this case because the ordinance is a local taxation or budget ordinance that need not comply with the statewide goals. In *Housing Counsel v. City of Lake Oswego,* 48 Or App 528, 617 P2d 655 (1980), 291 Or 878, 635 P2d 647 (1981), we held that an ordinance that imposed a "system development charge" was not subject to compliance with the statewide goals because it was a taxation ordinance. The ordinance involved here, however, is not intended as a general taxation ordinance which secondarily affects land use. This ordinance provides both for the extension of a street and for formation of a local improvement district (LID) to finance that extension. Respondents' petition to LUBA contested only the decision to extend the street without questioning the accompanying financing provision. The *Housing Counsel* rationale does not defeat LUBA's jurisdiction over decisions directly involving the use of land merely because the enabling ordinance happens to include a provision to finance the proposed improvement. If that were the case, a city could insulate any land use decision from LUBA's review merely by attaching a financing provision to the decision.

■    ▪ The city also argues that LUBA did not have jurisdiction under Or Laws 1979, ch 772, because Pendleton did not have an acknowledged comprehensive plan when this case was before LUBA, citing *Fisher v. Colwell,* 51 Or App 301, 625 P2d 1333 (1981). In that case, we held that LUBA did not have jurisdiction to review a city's decision to grant a zoning permit. We pointed out that, when a city did not have an acknowledged comprehensive plan, it is required to apply the statewide goals. ORS 197.275. Because the petition for review to LUBA did not contain any allegations of violations of the statewide goals, we held that LUBA had no jurisdiction under the statute. This case is different. Here, respondents' petition alleged violations of the statewide goals sufficient to confer jurisdiction under the statute.

(rejecting argument that county's decision to issue building permits for construction of homes was not a "land conservation and development action" reviewable by LUBA because the subdivision had been platted and recorded as such in 1957).

■    Petitioners next argue that LUBA should have granted their motion to dismiss because one of the respondents, Wagner, also had a lawsuit pending in circuit court challenging the local improvement district method chosen by the city to fund the street extension. Petitioners characterize this situation as "split jurisdiction," citing *Jarvill v. City of Eugene,* 289 Or 157, 613 P2d 1 (1980), and contend that it eliminates Wagner's "standing" to appeal to LUBA.[5]

In *Jarvill,* the plaintiff challenged in circuit court the validity of an *ad valorem* real property tax levied by the City of Eugene on property within a downtown development district. Plaintiffs contended that the taxes were unlawful or beyond the city's power to enact and that the taxes violated several provisions of the Oregon and United States Constitutions. The circuit court upheld the taxes. This court affirmed the trial court but *sua sponte* held that the Tax Court, rather than the circuit court, had jurisdiction over plaintiffs' challenges to the validity of the *ad valorem* property taxes. On review, the Supreme Court interpreted the relevant statute, ORS 305.410(1), to mean that the legislature intended the Tax Court to have exclusive jurisdiction to decide questions that arise under *state* tax laws. Because the provisions challenged by the plaintiffs were enacted by the *city* rather than the state, the court held that jurisdiction over them properly lay in the circuit court. It described the "split jurisdiction" theory on which petitioners here rely in the following discussion:

> "* * * According to the City, the tax court has jurisdiction whenever a party, who may be challenging a tax levied by a city, raises a challenge based on, or a question relating to, a tax law of this state. If the same party in the same proceeding, however, raises a challenge not related to a tax law of this state, then presumably that challenge would be litigated in the circuit court. This result—split jurisdiction—is patently unreasonable because it would require a city taxpayer challenging a city tax to institute two separate proceedings in two separate courts." 289 Or at 166-167.

*Jarvill* obviously does not support the argument that the pending circuit court suit for declaratory judgment

---

[5] Because *Jarvill* dealt with the *court's* jurisdiction, rather than with the standing of either party, we interpret petitioner's claim as an attack on LUBA's *jurisdiction,* Wagner's standing is discussed, *infra.*

stripped LUBA of its jurisdiction to consider respondents' challenge of the land use decision. *Jarvill* involved a narrow The court held that the Tax Court had exclusive jurisdiction over questions arising under state tax laws and that the circuit court had jurisdiction over questions arising under local tax laws. The court refused, however, to hold that jurisdiction between the two courts would be "split" when the same local tax provision is questioned both as to compliance with state tax law and for reasons not related to state law. Respondent Wagner was not forced to file two separate lawsuits because she wished to contest a single local government decision on the basis of both state and non-state related grounds—the result the Supreme Court sought to avoid in *Jarvill.* Instead, she availed herself of separate forums to contest two quite distinct decisions by the city. She appropriately appealed the decision to extend the street, which was arguably a land use decision, to LUBA. To contest the validity of the LID method of financing the street extension, she properly brought suit in the circuit court. We find no problem of split jurisdiction in these circumstances.

■ Next, petitioners claim that respondents Wagner and F. Carter Kerns lacked standing to appeal to LUBA. It is apparent from an examination of the statutes that govern standing in review proceedings before LUBA that these respondents have standing. Or Laws 1979, ch 772, § 4 states in relevant part:

"* * * * *

"(3) Any person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

"(a) Appeared before the city, county or special district governing body or state agency orally or in writing; and

"(b) Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."[6]

---

[6] *See* n 1, *supra.*

Wagner satisfied the standing requirements by alleging that she appeared before the city and was entitled as of right to notice and a hearing. F. Carter Kerns alleged that he appeared before the city, thereby satisfying the first requirement for standing. He also alleged sufficient facts to establish that his interests were adversely affected or aggrieved. He alleged that he lived within sight and sound of the proposed improvement and that the alleged improvement would increase traffic in the vicinity of his house, overload the street he travels on, bring urban development to unsuitable areas, result in removal of open space and recreational land he utilizes, and defeat his interest in the proper application of the state's land use laws. Those allegations[7] were sufficient to confer standing upon respondent.[8]

■     Petitioners also argue that ORS 197.040, which authorizes LCDC to establish statewide planning goals, violates the Fourteenth Amendment to the United States Constitution and Articles I, III and IV of the Oregon Constitution. This Court has already held that the legislature's delegation of power to LCDC to establish statewide goals is constitutional. *Meyer v. Lord,* 37 Or App 59, 586 P2d 367, *rev den,* 286 Or 303 (1978). We will not reconsider that decision.[9]

■     Finally, petitioners argue that the statewide goals interfere with matters of exclusively local concern. The statewide goals are general laws addressed primarily to substantive, regulatory objectives of the state, and they are not irreconcilable with petitioner city's freedom to choose its own political form. We reject this argument. *See LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204 (1978); *City of Roseburg v. Roseburg City Firefighters,* 50

---

[7] The petitioners did not challenge Kerns' and Wagner's factual allegations before LUBA. Absent such a challenge, LUBA treated the facts as admitted for the purposes of determining standing.

[8] Petitioners also suggest that, because Jean Kerns was denied standing by LUBA, some doubt is cast upon LUBA's determination that her husband had standing. Jean Kerns was denied standing because she did not appear at the hearing and did not allege that she was entitled, as a matter of right, to notice. She therefore failed to satisfy any requirement for standing.

[9] We have rejected a similar contention that the creation of LUBA involved an unconstitutional delegation of legislative authority. *Baxter v. Monmouth City Council,* 51 Or App 853, 627 P2d 500, *rev den* 291 Or 368 (1981).

Or App 188, 622 P2d 755, *aff'd* 292 Or 266, 639 P2d 90 (1981).

Affirmed.