Argued and submitted September 9, affirmed November 23, 1982

## CITY OF PENDLETON et al,
*Petitioners on Review,*

*v.*

## KERNS et al,
*Respondents on Review.*

## (LUBA 80-138, CA A20422, SC 28659)

653 P2d 992

Rudy M. Murgo, Pendleton, filed the brief and argued the cause for petitioner, City of Pendleton. With him on

the brief was William J. Storie, Pendleton, who argued the cause for petitioners Hill.

Thomas R. Page, Portland, argued the cause and filed the brief for respondents.

Richard D. Rodeman, Corvallis, Michael Huston, Salem, Howard Rankin, Ruth M. Spetter and Kathryn S. Beaumont, Portland, filed a brief of amicus curiae for the City of Corvallis, League of Oregon Cities, and the City of Portland.

Before Lent, C.J., Peterson, Linde, Tanzer, Campbell and Carson, Justices.

CAMPBELL, J.

## CAMPBELL, J.

The issue presented is whether the Land Use Board of Appeals (LUBA) has jurisdiction to review a city ordinance that authorizes the improvement of an already dedicated street and sets up a local improvement district (LID) to finance the construction.

North Main Street in the City of Pendleton was first dedicated as a city street in 1915. The portion of the street at issue here, however, has never been improved. In 1958, the city rejected a request to vacate the unimproved segment, but it did permit property owners in the area to barricade the end of the improved street and use the remainder as a neighborhood park. The comprehensive plan for the city, adopted by the Pendleton City Council in 1965, designates this segment of North Main as a city street. This plan has yet to be acknowledged by the Land Conservation and Development Commission (LCDC).

In September 1980, the city council, after notice to affected property owners and a public hearing, adopted Ordinance No. 3141; the ordinance authorizes improvement of the segment and creates a LID to finance the construction.[1] The improvement will involve extending the present street about 360 feet, grading and paving the segment, and the installation of storm sewers, drains, curbs, and sidewalks. The construction will necessitate removal of the barricade and destruction of the park. It will not,

---

[1] Ordinance No. 3141, entitled "AN ORDINANCE CREATING STREET AND WATER LOCAL IMPROVEMENT DISTRICT NUMBER 393; AUTHORIZING CALL FOR BIDS; PROVIDING FOR LIENS; AND DECLARING AN EMERGENCY" provides in pertinent part:

"*SECTION 1.* That the following described area in the City of Pendleton: [subject area described] in Improvement District Number 393 shall be and is hereby ordained to be improved by construction of a street with curbs, gutter, sidewalks, storm sewer and water in accordance with the preliminary plans and outline specifications thereof filed with the City Recorder of Pendleton, Oregon.

"* * *

"*SECTION 9.* The cost of making the improvement shall be a lien and a charge upon all lots specially benefited by the improvement proprotionately as they are thereby benefited by such improvement. The owners of such lots shall be liable for the payment of the cost thereof proportionately as they are so benefited."

however, physically affect any property other than that already dedicated for city street purposes. Neither the ordinance nor any supplemental report contains any factual findings or legal conclusions regarding the street improvement's compliance with the city's comprehensive plan or with LCDC's statewide planning goals.

The portion of North Main at issue is in a residential area near the Pendleton city limits. The area has recently been experiencing growth pressures and two large residential developments have been proposed which would abut the street as improved. One, a subdivision of about 75 to 85 lots, is within the city limits but cannot be developed due to lack of adequate access. The other, a tract which adjoins the city limits, has been the subject of annexation proceedings. *See City of Pendleton v. Kerns,* 58 Or App 641, 650 P2d 101, *rev den,* 293 Or 653 (1982). The proposed improvement of North Main will facilitate development of both these areas. The street as improved, moreover, will be a major access route into the city for future residents of the developments.

Respondents herein are property owners near the proposed improvement. They objected to the street improvement before the city council and, after passage of the ordinance authorizing construction, they petitioned LUBA for review of the decision. Their challenge to the ordinance is based on their contention that the city council violated state statutory land use planning requirements by failing to address the issue of whether the street improvement is in compliance with the city's plan and the statewide goals. LUBA held, *inter alia,* that it had jurisdiction over the dispute and that the city council erred in not reviewing and discussing the compliance issue; LUBA remanded the ordinance to the council with instructions that it adopt adequate findings and conclusions on compliance. The Court of Appeals affirmed. 56 Or App 818, 642 P2d 658 (1982). We accepted review to determine whether LUBA acted properly in exercising jurisdiction to review the ordinance.

The statutory provisions governing administrative review of local government actions affecting land use have undergone significant change in the past several years. Particularly relevant here have been the shift of initial

review authority for certain such actions from LCDC to LUBA and changes in the operative statutory language governing which actions are reviewable. *See State Housing Council v. City of Lake Oswego,* 291 Or 878, 882-885, 635 P2d 647 (1981). We have not yet addressed the extent of LUBA's jurisdiction.

The statute which created and governs LUBA (Oregon Laws, 1979, chapter 772, as amended by Oregon Laws 1981, chapter 748)[2] provides in § 4(1) that, subject to the right of judicial review and except as otherwise provided by ORS 197.605 *et seq.,*[3] LUBA has "exclusive jurisdiction to review any land use decision of a local government * * *."

A "land use decision" was defined by former § 3(1)(a)[4] as:

"A final decision or determination made by a city * * * that concerns the adoption, amendment or application of:

"(A)   The state-wide planning goals;

"(B)   A comprehensive plan provision; or

"(C)   A zoning, subdivision or other ordinance that implements a comprehensive plan; * * *."

The issue presented is whether Ordinance No. 3141 authorizing the street improvement work and setting up a LID is a "land use decision" within the contemplation of the statute, *i.e.,* whether it is a final decision that concerns "adoption, amendment or application" of the goals, the city's plan, or an ordinance implementing the plan.

As an initial matter, petitioners argue that the ordinance merely "improves" an already dedicated street and that it is essentially a taxation or financial decision of the city beyond LUBA's power to review. In support of their argument, petitioners rely on the Court of Appeals case of *State Housing Council v. City of Lake Oswego,* 48 Or App 525, 617 P2d 655 (1980), *pet dis* 291 Or 878, 635 P2d

---

[2] This statute has not been codified, but it has been reprinted in volume 2 of the Oregon Revised Statutes in the pages preceding ORS chapter 197.

[3] ORS 197.605 *et seq.,* which governs review of certain land use actions affecting acknowledged comprehensive plans, is not applicable here since Pendleton's comprehensive plan has not yet been acknowledged by LCDC.

[4] Oregon Laws 1981, chapter 748, § 1 repealed this section and replaced it with a similar provision which is now codified in ORS 197.015(10).

647 (1981). There the court held that a city ordinance imposing a general "systems development charge" on all new construction throughout the city was not a "land use decision" within LUBA's jurisdiction, notwithstanding the significant effect it might have on land use. The court concluded that local taxation, budget, and fiscal decisions were not intended by the legislature to be within the ambit of the state land use planning laws and regulations. 48 Or App at 537-538. *See also Westside Neighborhood Quality Project, Inc. v. School District 4J*, 58 Or App 154, 647 P2d 962, *rev den* 294 Or 78 (1982) (school district's decision to close school not a "land use decision" reviewable by LUBA).

■ ■  Without reaching here the issue of whether those cases were rightly decided, we simply note that petitioners' reliance on them is misplaced. Respondents do not by this action challenge the validity of the fiscal aspect of the ordinance, *i.e.*, that part imposing the LID; their challenge here is only with regard to the decision to construct the street. Even assuming *arguendo* that the decision to create the LID is not a "land use decision" reviewable by LUBA, it does not necessarily follow that other aspects of the ordinance are non-reviewable. A local government does not immunize a land use decision from LUBA review merely through the expedience of attaching financing provisions. To the extent the various aspects of an ordinance are severable, those which fall within the definition of "land use decision" are subject to LUBA review even though other aspects are not. Accordingly, the fact that Ordinance No. 3141 authorizing the street construction work has a concomitant LID financing provision does not, of itself, operate to divest LUBA of jurisdiction to review the decision to undertake the street construction.

Petitioners, in addition, find it significant that the portion of North Main Street at issue was first dedicated and platted years ago and that it is designated as a city street on the city's comprehensive plan. Prior to the passage of Ordinance No. 3141 authorizing construction of the street, however, there had been no final and binding determination as to the use to which the land was to be put. The fact that the land had already been the subject of preliminary planning does not mean that the final determination

years later to permanently commit the land to a particular use is necessarily exempt from LUBA review. *See Columbia Hills Development Co. v. LCDC,* 50 Or App 483, 490-491, 624 P2d 157, *rev den* 291 Or 9 (1981). The factual and legal environment may have so changed in the intervening years that even though it may have been a wise and proper action to have improved the street years ago, it may be improvident and improper now. Thus, the city council's decision to improve the street is not one which is exempt from LUBA review.

The City of Pendleton's comprehensive planning duties are set out in ORS 197.175,[5] which provides in pertinent part:

"(1) Cities * * * shall exercise their planning and zoning responsibilities * * * in accordance with ORS 197.005 to 197.430 and 197.605 to 197.650 and the goals approved under ORS 197.005 to 197.430 and 197.605 to 197.650.

"(2) Pursuant to ORS 197.005 to 197.430 and 197.605 to 197.650, each city * * * in this state shall:

"(a) Prepare, adopt, amend and revise comprehensive plans in compliance with goals approved by the commission [LCDC];

"(b) Enact land use regulations to implement their comprehensive plans; [and]

"(c) except as provided in ORS 197.605(6), if its comprehensive plan and land use regulations have not been acknowledged by the commission, make land use decisions in compliance with the goals; * * *."

---

[5] This statute was recently amended by Oregon Laws 1981, chapter 748, § 15. ORS 197.175(2) formerly provided, in pertinent part:

"(2) Pursuant to ORS 197.005 to 197.430 and 469.350, each city and county in this state shall:

"(a) Prepare and adopt comprehensive plans consistent with state-wide planning goals approved by the commission [LCDC]; and

"(b) Enact zoning, subdivision and other ordinances or regulations to implement their comprehensive plans."

The amended version of ORS 197.175(2), quoted in the text, illustrates more clearly the circularity of the definition of "land use decision." Under subsection (2)(c), "land use decisions" must be made in compliance with the statewide goals; "land use decision" is, in turn, defined by both the former and the present statute as a decision that concerns *inter alia* application of the goals.

In *Peterson v. Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977), we were called upon to determine whether a city ordinance annexing 141 acres of land to the city fell within the ambit of ORS 197.175, *i.e.,* whether a city's annexation must comply with the goals. We rejected the argument that only decisions that have an immediate impact on land use designations, such as the adoption of zoning ordinances, must comply:

> "* * * [T]he exercise of 'planning and zoning respon-sibilities' must be read to refer not only to the preparation of comprehensive plans and the enactment of zoning and other ordinances to implement those plans but also to other local planning activities which will have a significant impact on present or future land uses, such as the decision to extend city boundaries by annexation." 279 Or at 253-254.

We went on to hold that since the city there had adopted the annexation ordinance without addressing the com-pliance issue, the ordinance had to be remanded to the city council for consideration of the applicable goals and entry of appropriate findings on compliance. 279 Or at 256-257.

■         Admittedly, "significant impact on present or future land uses" is a nebulous standard, particularly in the context of a city's decision to undertake street improvement work. Whereas some decisions, such as to resurface a street or repair potholes, have only a *de minimis* impact on land use, and some, such as to construct a major arterial road or a bridge, have a substantial impact, a large number of a city's day-to-day decisions regarding public works and roads fall in between. Public works and road projects are an aspect of a city's "planning and zoning responsibilities"[6] and as such must be in compliance with the applicable goals and comprehensive plan provisions. A city's final decision authorizing a significant project of this nature is, as a result, reviewable by LUBA for goal and plan com-pliance. We do not believe, however, that the legislature intended the myriad of prosaic administrative decisions regarding routine maintenance and minor public works and road projects be subject to LUBA and judicial review

---

[6] *See, e.g.,* ORS 227.090(1)(a) and (b) dealing with the powers and duties of city planning commissions, and LCDC Goals 11 (Public Facilities and Services) and 12 (Transportation).

for compliance. Consequently, we reiterate the standard set forth in *Peterson* and hold that Ordinance No. 3141 is subject to LUBA review if, but only if, it can be said that the street improvement work will have a "significant impact on present or future land uses" in the area.

The remaining question is thus whether respondents have established that the improvement will have such a "significant impact on present and future land uses" that LUBA review is warranted.[7]

Respondents point to two effects the street construction will have on land uses: (1) It will entail destruction of the neighborhood park, and (2) it will literally "pave the way" for substantial residential development in the area. LUBA's final opinion found the latter argument persuasive:

> "Thus, * * * this ordinance not only authorizes construction of a street and the immediate development of lots bordering on the street but goes a long way toward the future development of many additional lots. Accordingly, this one improvement has not only an immediate but a long term impact on land development.
>
> "* * * *
>
> "The city's decision from a factual standpoint has a considerable impact on land use, both present and future, thereby constituting an exercise of the city's planning and zoning responsibilities. See: *Peterson v. Klamath Falls,* [supra]. The city's decision must therefore involve application of and be consistent with the statewide planning goals. ORS 197.175(1); *Peterson, supra.* The city's decision to extend North Main Street as well as the width of pavement, etc., for that street also involves application of the city's comprehensive plan because the decision must conform to the policies set forth in the comprehensive plan. Because Ordinance No. 3141 involves the application of the statewide planning goals as well as the comprehensive plan it is a land use decision within the meaning of Oregon Laws 1979, ch 772, sec 3." 2 Or LUBA 295, 298 (1981).

Petitioners argue, with some merit, that the issue is the effect of the street, not the wisdom or propriety of

---

[7] Respondents were the parties who sought to have LUBA review the ordinance. Accordingly, the burden was upon them to establish LUBA's jurisdiction, *i.e.,* that the ordinance was a "land use decision."

allowing the proposed developments in the area to proceed. Construction of the street, though it may facilitate those developments, does not make them inevitable. If respondents have objections to the proposed developments, the appropriate time to raise them is when applications for development of those particular properties are considered.

■        This is not to say, however, that the proposed developments are irrelevant to the decision to improve the street. The city's comprehensive plan designates North Main as a minor neighborhood street. The evident purpose of the ordinance is to transform it into a major access route for the residents of the proposed developments. The effect of Ordinance No. 3141 will therefore be to turn a neighborhood park in a quiet residential area on the outskirts of town into a major thoroughfare.[8] The ordinance, in other words, effects a significant change in the land use *status quo* of the area and is not simply the *de minimis* street improvement project petitioners suggest. Accordingly, we hold that Ordinance No. 3141 is a "land use decision" and that LUBA had jurisdiction to review the ordinance for compliance with the statewide goals and the city's comprehensive plan.[9]

The decision of the Court of Appeals is affirmed. The decision of the Land Use Board of Appeals is affirmed.

---

[8] Respondents have not contended that they have acquired any prescriptive or other rights in the segment as a park, nor is there any indication that the city ever had plans for the property other than as a street. Although the property was a park only at the city's sufferance, that does not mean that the decision to change its land use from a *de facto* park to a city street is not a land use decision.

[9] Petitioners raise a number of other arguments, but these have been adequately dealt with in the Court of Appeals opinion and there is no need to elaborate on them further. *See* 56 Or App at 824-827.