Argued and submitted November 8, 1996, decision of the Court of Appeals
reversed; remanded to the Land Use Board of Appeals for further proceedings
March 27, 1997

## MURPHY CITIZENS ADVISORY COMMITTEE,
*Petitioner on Review,*

*v.*

## JOSEPHINE COUNTY,
*Respondent on Review,*

*and*

## COPELAND SAND AND GRAVEL, INC.,
*Intervenor / Respondent on Review.*

(LUBA 95-031; CA A90324; SC S43078)

934 P2d 415

Matthew G. Fawcett, Medford, argued the cause and filed the petition for petitioner on review.

James R. Dole, of Schultz, Salisbury, Cauble, Versteeg & Dole, Grants Pass, argued the cause and filed the brief for intervenor/respondent on review.

No appearance by or for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.

GILLETTE, J.

**GILLETTE, J.**

In this land use case, we are called on to decide the scope and meaning of a 1995 amendment to ORS 197.015, the definition section of Oregon's land use laws. More specifically, we must determine whether that amendment had the effect of excluding from the jurisdiction of the Land Use Board of Appeals (LUBA) cases in which a local government body had been directed by an alternative writ of mandamus either to take a particular land use action or to show cause why it has not done so, and that local body has chosen to take the land use action. LUBA concluded that the amendment divested it of jurisdiction under those circumstances. The Court of Appeals agreed. *Murphy Citizens Advisory Com. v. Josephine County*, 138 Or App 334, 336, 909 P2d 180 (1995) (*Murphy III*).[1] We allowed review and now reverse the decision of the Court of Appeals.

LUBA has exclusive jurisdiction to review "any land use decision * * * of a local government." ORS 197.825(1). Before 1995, ORS 197.015(10)(a) provided that a "land use decision," with exceptions not pertinent here, included:

"(A)   A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i)   The goals;

"(ii)   A comprehensive plan provision

"(iii)   A land use regulation

"(iv)   A new land use regulation.

"(B)   A final decision or determination of a state agency other than the commission with respect to which the agency is required to apply the goals."

In 1995, the legislature amended ORS 197.015(10) by adding a new paragraph (d).[2] Or Laws 1995, ch 812, § 1. That new paragraph provides:

---

[1] This case is the fourth appellate decision (two by the Court of Appeals, two by this court) in this ongoing controversy. Because each decision contributed to the present posture of the case, each receives its own Roman numeral to aid in our discussion here.

[2] Paragraphs (b) and (c) of ORS 197.015(10) are not relevant to the issue presented in the present case.

"(d) ['Land use decision' d]oes not include:

"(A) A writ of mandamus issued by a circuit court in accordance with ORS 215.428(7) or 227.178(7); or

"(B) A local land use approval in response to a writ of mandamus."

The issue in this case is the meaning of the phrase, "writ of mandamus," as it is used in ORS 197.015(10)(d)(B). The answer to that question is best explained in the context of the history of the present controversy.

This controversy began in December 1991, when Copeland Sand & Gravel, Inc. (Copeland), filed an application with Josephine County, seeking a permit to construct and operate an asphalt batching business on land near Grants Pass. Murphy Citizens Advisory Committee (MCAC) opposed the project and intervened in the application review process. When Copeland's application was approved at the Josephine County Site Review Committee level, MCAC appealed that approval, first, to the Josephine County Planning Commission and, later, to the Josephine County Board of Commissioners. On September 22, 1992, one day before the Board was scheduled to make its final decision (but more than 120 days after Copeland's application was complete), Copeland invoked the mandamus procedure provided at ORS 215.428(7)[3] by filing a "Petition for an Alternative Writ of Mandamus" in the circuit court to compel Josephine County to approve its application. The trial court issued an "Alternative Writ of Mandamus" that directed Josephine County to

---

[3] ORS 215.428(7)(b) provides, in relevant part:

"[I]f the governing body of the county or its designate does not take final action on an application for a permit, limited land use decision or zone change within 120 days after the application is deemed complete:

"* * * * *

"(b) The applicant may apply in the circuit court of the county where the application was filed for a writ of mandamus to compel the governing body or its designate to issue the approval. The writ shall be issued unless the governing body shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations as defined in ORS 197.015."

An essentially identical statute, ORS 227.178(7), makes the same mandamus remedy available against cities. *See State ex rel Compass Corp. v. City of Lake Oswego*, 319 Or 537, 878 P2d 403 (1994) (demonstrating methodology under that analogous statute).

issue a final approval "according to the terms of the application" or to show cause why it had not done so.

MCAC already was participating in the administrative process relating to Copeland's application. MCAC sought and obtained the circuit court's permission to intervene in the mandamus action. However, before any proceedings occurred in that action, the County privately agreed to approve Copeland's asphalt batching project administratively, subject to certain conditions, and entered into a written stipulation with Copeland to that effect.[4] When the County filed that two-party stipulation in circuit court, the court dismissed the mandamus proceeding as moot and entered judgment accordingly.

 MCAC appealed the dismissal of the mandamus proceeding to the Court of Appeals. The Court of Appeals ultimately dismissed that appeal in an unpublished order, but vacated the circuit court's judgment and remanded the case to that court for further action on the ground that the circuit court's order was not final or appealable, because it did not dispose of MCAC's interest in the case. On January 10, 1994, the circuit court issued a second judgment. That judgment (1) recited that the parties agreed that the stipulation rendered the action moot, (2) denied all further consideration of the writ, (3) dismissed MCAC's claim for attorney fees, and (4) adjudged that Josephine County had complied with the "Alternative Writ of Mandamus" "by stipulating and agreeing that the requested development permit would issue subject to the referenced conditions."

While its mandamus appeal was making its way up and down the appellate ladder, MCAC instituted concurrently an administrative attack on the County's stipulation, challenging that action before LUBA as a "land use decision." On Copeland's motion, LUBA dismissed that challenge, concluding that the stipulation did *not* constitute a "land use decision" subject to its jurisdiction. The Court of Appeals affirmed that decision. *Murphy Citizens Advisory Com. v.*

---

[4] The conditions were the same as those that the Josephine County Planning Commission had imposed when it had affirmed the site commission's approval of Copeland's application.

*Josephine County*, 123 Or App 539, 860 P2d 857 (1993) (*Murphy I*).

This court reversed the Court of Appeals' *Murphy I* decision in *Murphy Citizens Advisory Com. v. Josephine County*, 319 Or 477, 878 P2d 414 (1994) (*Murphy II*). The court concluded that the county's stipulation, although made for the apparent purpose of settling a mandamus action brought by the would-be developer, was, nevertheless, a "land use decision" and, as such, was subject to review by LUBA. 319 Or at 482-83. The court remanded the administrative case to LUBA. LUBA, in turn, remanded the matter to the County.

Shortly after LUBA's remand to it, the County made good on its stipulation and approved Copeland's application. MCAC responded by appealing *that* approval to LUBA, and LUBA again dismissed the appeal (this time relying on the 1995 statutory amendment to ORS 197.015(10)). In its final order and opinion, LUBA explained:

> "[T]he issuance of the building permit, and the correspondence preceding its issuance, were in response to a circuit court writ of mandamus. Even if petitioner had established that [the approval] could be construed to be a land use decision in another context, when the county's action[ is] mandated by a circuit court order, as is the case here, [it is] not [a] land use decision[ ] over which we have jurisdiction.
>
> "LUBA's lack of jurisdiction over actions taken in compliance with a circuit court writ of mandamus has been statutorily confirmed through the adoption of Oregon Laws 1995, chapter 812, section 1, which became effective September 9, 1995. That statute modifies the definition of 'land use decision' under ORS 197.015(10) to exclude 'a local land use approval in response to a writ of mandamus.' "

(Citations omitted; footnote omitted.)

MCAC sought judicial review of the dismissal, arguing that LUBA had misapprehended the effect of the 1995 amendment on which LUBA had relied.[5] MCAC argued, in

---

[5] MCAC also argued that LUBA had dismissed for a second reason—that MCAC failed to respond to intervenor Copeland's motion to dismiss for lack of subject matter jurisdiction—and separately assigned error to LUBA's alleged dismissal on that ground. The Court of Appeals did not address that assignment of

particular, that the amendment precludes LUBA review only of approvals issued in response to *peremptory* writs. Because the circuit court had issued only an *alternative* writ in the present case, MCAC argued, the amendment did not operate to divest LUBA of jurisdiction.

The Court of Appeals disagreed and affirmed LUBA's order. Noting that the amended statute used the "undifferentiated term 'writ of mandamus'," that court concluded that it is clear from the amendment's text that it "unambiguously applies to all writs."[6] *Murphy III*, 138 Or App at 338. Ultimately, the Court of Appeals concluded that the 1995 amendment was meant to apply "from the inception of a mandamus action rather than its culmination" and, therefore, it was applicable to the stipulated approval at issue. *Id.* at 339. This court again allowed review.

The question of the intended scope of the term, "writ of mandamus," in ORS 197.015(10)(d)(B) is a matter of the legislature's intent. As always, we begin any inquiry into that intent behind a statute by examining its text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Context includes other provisions of the

error, apparently concluding that, even if such an error had occurred, it was harmless, because MCAC was able to and did present its jurisdictional arguments at the Court of Appeals.

MCAC continues to press that point before this court. Like the Court of Appeals, we do not address it. No purpose would be served by remanding the case to LUBA to answer, in the first instance, that jurisdictional question. *See Holland v. City of Cannon Beach*, 323 Or 148, 915 P2d 407 (1996) (no purpose is served in remanding case to LUBA when answer to the pertinent legal question is not one to which LUBA would be owed deference).

[6] In further support of that reading, the Court of Appeals opined that MCAC's construction would run counter to this court's decision in *Compass*, 319 Or at 537-46, because MCAC's construction of the statute necessarily implies that a local government retains some ability to deny an application after an alternative writ has issued. The Court of Appeals suggested that our decision in *Murphy II* suffers from the same infirmity and that the legislature intended to overrule that decision when it enacted Oregon Laws 1995, chapter 812. *Murphy III*, 138 Or App at 339.

We think, however, that the Court of Appeals takes the wrong bearing from *Compass*. *Compass* holds that, once the mandamus procedure at ORS 227.178(7) (or, in this case, the identical procedures at ORS 215.428(7)) has been invoked, the local government's belated *denial* of the application at issue does not divest a circuit court of jurisdiction to enter a *peremptory* writ compelling *approval*. It does not hold, or even imply, as the Court of Appeals appears to believe, that the local government is altogether without jurisdiction to act in any way on the application once it has received an alternative writ of mandamus.

statute under scrutiny, as well as other related statutes. *Id.* at 611.

ORS 197.015(10)(d) is divided into two parts—subparagraphs (A) and (B). Subparagraph (A) provides that, for purposes of the land use statutes, the term "land use decision" does not include a writ of mandamus issued by a circuit court "in accordance with ORS 215.428(7) or 227.178(7)." ORS 197.015(10)(d)(A). As explained elsewhere in text and footnote, 325 Or at 104 & n 3, the two essentially identical statutory provisions that are referred to in ORS 197.015-(10)(d)(A) outline the circumstances in which an applicant for a land use decision may, if 120 days have passed since the application was completed, seek a writ of mandamus to compel the land use decision. By clear wording, subparagraph (A) simply establishes that a circuit court's act in *issuing* a writ of mandamus is not *itself* a "land use decision," subject to review by LUBA. By its terms, that subparagraph says nothing about any action that a local government might take after the writ issues.

Subparagraph (B) does speak to that issue. It provides that a local land use approval that is issued "in response to" the writ of mandamus *also* is not a "land use decision." As discussed, the Court of Appeals concluded that subparagraph (B) unambiguously applies to approvals "in response to" alternative writs of mandamus, as well as those in response to peremptory writs of mandamus, because the undifferentiated term, "writ of mandamus," appears to embrace *both* kinds of writs. *Murphy III*, 138 Or App at 338. Although we agree that that term, when read standing alone, *may* be read to include both alternative and peremptory writs, we think that, when the term is read in context with other pertinent statutes, the reading given to it by the Court of Appeals no longer is plausible.

The most obvious contextual statute is ORS 215.428(7)(b), the statute to which ORS 197.015(10)(d) refers.[7] We set out the relevant part of the text of that former statute again here for convenience:

---

[7] The Court of Appeals and the parties appear to have assumed throughout these proceedings that, despite a lack of parallel wording between the two subparagraph of ORS 197.015(10)(d), the "writ of mandamus" referred to in subparagraph (B) of that subsection is the same "writ of mandamus" that is referred to in

"[I]f the governing body of the county or its designate does not take final action on an application for a permit, limited land use decision or zone change within 120 days after the application is deemed complete:

"\* \* \* \* \*

"(b) The applicant may apply in the circuit court of the county where the application was filed for a writ of mandamus to compel the governing body or its designate to issue the approval. The writ shall be issued unless the governing body shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations as defined in ORS 197.015."

The most striking thing about ORS 215.428(7)(b) is that, although it uses the generic term, "writ of mandamus," it describes that writ as one "to compel the governing body or its designate to issue the approval." Such a writ is, in traditional terms, a *peremptory writ*. Moreover, the statute does not appear to contemplate procedures that exactly parallel those normally associated with traditional mandamus practice. In order to fully explain the foregoing propositions, however, it is necessary to give a brief overview of another set of contextual statutes, *i.e.*, those governing traditional mandamus practice.

Subject to this court's original mandamus authority, as authorized by Article VII (Amended), section 2, of the Oregon Constitution, mandamus procedure in Oregon is prescribed by statute. ORS 34.105 to 34.240. Certain of those statutory provisions provide a useful context here.

Writs of mandamus are issued in response to a petition filed by a relator. ORS 34.105(4); ORS 34.130(1). With respect to the form of the writ, ORS 34.150 provides:

"The writ [of mandamus issued by a court] shall be either alternative or peremptory; when in the alternative, it shall state concisely the facts, according to the petition, showing the obligation of the defendant to perform the act, and the omission of the defendant to perform it, and command the defendant \* \* \* [to] do the act required to be performed, or show cause before the court or judge \* \* \* why

---

subparagraph (A), *viz.*, a writ of mandamus "issued by a circuit court in accordance with ORS 215.428(7) or 227.178(7)." We, too, proceed on that assumption.

the defendant has not done so; and that the defendant then and there return the writ, with the certificate of the defendant annexed, of having done as the defendant is commanded, or the cause of omission thereof. When peremptory, the writ shall be in a similar form, except that the words requiring the defendant to show cause why the defendant has not done as commanded, and to return the cause therefor, shall be omitted."

The foregoing traditional distinction between two kinds of writs of mandamus is not echoed in the statutes at issue here. As noted, the reference to "[t]he writ" in ORS 215.428(7)(b) describes "a" writ that "compel[s] the governing body" and that "shall be issued *unless* the governing body shows that the approval would violate [particular specified land use laws or regulations]." (Emphasis added.) That is, there is only one "writ" contemplated by that statute, and it is one that issues only *after* there has been an opportunity for the governing body to remonstrate. Under traditional Oregon mandamus procedure, a writ to that effect that issues after such an opportunity to remonstrate is a *peremptory* writ. ORS 34.150.

The foregoing brings us to the second striking thing about ORS 215.428(7): The statute does not appear in other respects to contemplate that traditional mandamus procedures will be followed; it instead contains its own truncated procedure that is described in unique nomenclature. For example, there is no provision for a "petition" to be filed by a "relator," as is the practice under ORS 34.130(1). By contrast, the process at issue under ORS 215.428(7)(b) begins when the "applicant" (for the local land use action) chooses to "apply" for the writ. No particular form of document is prescribed. All that is necessary under the special procedure in ORS 215.428(7) is that the governing body be given an opportunity to respond, if it wishes to do so. That procedure is a "show cause" approach. It thus appears that, both by virtue of the specific description of the writ in the statute and the special procedure contemplated by the statute, the legislature did not contemplate that an "alternative" writ would be used in proceedings under ORS 215.428(7).[8]

---

[8] In fact, the present proceeding *did* begin with the issuance of what was labeled an "Alternative Writ of Mandamus" to the County. But the *labeling* of that

We conclude that the only "writ" that is contemplated by ORS 215.428(7)(b) is *peremptory* in nature. It follows that that sort of writ is "the writ" that is referred to in the statute directly at issue in this case, ORS 197.015-(10)(d)(B). We therefore conclude that, when the latter statute exempts from the definition of a "land use decision" a local land use approval "in response to" a writ of mandamus, it is referring only to those land use approvals that are directed by a peremptory writ. A discretionary decision by a local governing body to grant approval of a land use application, made before issuance of the peremptory writ pursuant to the statutory procedure, does not fall within the exclusion found in ORS 197.015(10)(d)(B). There being no other statute that exempts such a discretionary local land use decision from the definition of "land use decision" subject to LUBA jurisdiction, an approval of that kind is a "land use decision" subject to LUBA jurisdiction.

When its text and context are examined, the meaning of ORS 197.015(10)(d)(B) is clear. That statute does not exempt local land use approvals like the one involved in this case from LUBA jurisdiction. The contrary conclusions of LUBA and the Court of Appeals were erroneous.[9]

The decision of the Court of Appeals is reversed. The matter is remanded to the Land Use Board of Appeals for further proceedings.

---

procedural device says nothing about whether the label was *correct*. As we explain in text, any form of proceeding that would have given the governing body notice and an opportunity to make the showing contemplated by the statute would have sufficed.

   [9] Because of the basis for our disposition of this case, we need not address the relevance, if any, of the fact that the permit that was issued by the County in this case was not in the form commanded by the trial court's "Alternative Writ of Mandamus."