Argued and submitted February 1, reversed and remanded May 19, petition for review denied September 28, 1999 (329 Or 357)

Kent SEIDA
and Coast Drafting & Design,
*Appellants,*

*v.*

CITY OF LINCOLN CITY,
*Respondent,*

*and*

NELSCOTT NEIGHBORHOOD ASSOCIATION
and Eagles Auxiliary,
*Intervenors - Respondents.*

(974508; CA A102681)

982 P2d 31

Joan M. Chambers argued the cause for appellants. With her on the briefs was Kulla, Ronnau, Schaub & Chambers, P.C.

Christopher P. Thomas argued the cause and filed the brief for respondent City of Lincoln City.

No appearance for intervenors - respondents Nelscott Neighborhood Association and Eagles Auxiliary.

Before Landau, Presiding Judge, and Wollheim and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiffs-relators (relators) appeal the trial court's judgment in favor of defendant City of Lincoln City (the city) in this mandamus action under ORS 227.178(7)(b). We reverse and remand.

The relevant facts are undisputed. Relators applied to the city for site review approval in connection with a planned commercial building. After an initial decision by the city planning staff, relators and others sought review by the city planning commission. More than 120 days after the completed application had been filed, the matter still was pending before the planning commission. On August 29, 1997, relators filed a petition for a writ of mandamus, pursuant to ORS 227.178(7)(b), which provides that—subject to exceptions not pertinent to this case—if the governing body of a city or its designee fails to take final action on an application for a permit, limited land use decision, or zone change within 120 days, as required by ORS 227.178(1), then:

> "The applicant may apply in the circuit court of the county where the application was filed for a writ of mandamus to compel the governing body or its designee to issue the approval. The writ shall be issued unless the governing body shows that the approval would violate a substantive provision of the city comprehensive plan or land use regulations as defined in ORS 197.015. The writ may specify conditions of approval that would otherwise be allowed by the city comprehensive plan or land use regulations."

ORS 227.178(7)(b).

On September 2, the planning commission approved relators' application subject to conditions. On September 4, the circuit court ordered the issuance of an alternative writ of mandamus, and the clerk issued the writ on September 8. On September 11, relators appealed the planning commission's imposition of the conditions to the city council, as the review provisions of the city's zoning ordinance allow. Insofar as we are advised, the city council has never acted on that appeal. On September 18, the petition, order, and alternative writ in the mandamus proceeding were served on the city.

The city moved to dismiss the mandamus action, arguing that the planning commission's decision constituted final city action for purposes of ORS 227.178, notwithstanding the pending appeal to the city council. The city acknowledged that relators filed their mandamus petition before the planning commission made its decision, but it argued that the commission's decision nevertheless preceded the institution of the action because the alternative writ was neither issued nor served until after the commission acted. The trial court agreed in essence with the city's argument and dismissed the mandamus petition. On appeal, relators contend, among other things, that the trial court erred in concluding it was foreclosed from granting relief under ORS 227.178(7)(b) because the planning commission rendered its decision before relators had served the mandamus papers. Arguing in support of the trial court's ruling, the city relies on *State ex rel Fraley v. Deschutes Cty. Bd. of Comm.*, 151 Or App 201, 208, 948 P2d 1249 (1997), *rev den* 327 Or 305 (1998), where we held that, even when a local government's final action is taken after the 120-day period has run, "a mandamus action under [ORS 227.178(7)(b) or its county analog, ORS 215.428(7)(b)] must have been brought before the belated local decision was made in order for the mandamus remedy to be available." The city reasons that, "[u]nder the logic of *Fraley*, a petitioner must obtain service of process on the city or county, before the city or county takes final action, in order to have the right to a mandamus remedy."

■ We find the city's reasoning unpersuasive. Assuming without deciding that the city is correct in its assertion that the planning commission's decision was "final action," we nevertheless conclude that the action was "brought," within the meaning of *Fraley*, at the time that the mandamus petition was filed four days before the commission made its decision.

The city offers little explanation for its thesis that service rather than filing is the relevant event. As a general proposition about the time actions are deemed to have been brought, the city's thesis is contrary to ORCP 3 (action "commenced" by filing a complaint). Insofar as service is relevant to the question, if service is accomplished within 60 days thereafter, the action is "deemed to have been commenced

upon the date on which the complaint * * * was filed." ORS 12.020(2). Service of the papers was effected here well within that time frame.

The city suggests, however, that the court does not obtain subject matter jurisdiction in a *mandamus* action until the alternative writ is issued and served. There might be some merit to that suggestion if this were a "traditional" mandamus proceeding under ORS chapter 34. In such cases, the alternative writ serves as the "foundation for all subsequent proceedings," *Johnson v. Craddock et al*, 228 Or 308, 322, 365 P2d 89 (1961), and "a petition for mandamus is no part of the pleadings." *State ex rel Venn v. Reid*, 207 Or 617, 622, 298 P2d 990 (1956).

That "traditional" role of the alternative writ, however, does not obtain in actions under ORS 227.178(7)(b) and ORS 215.428(7). In *Murphy Citizens Advisory Com. v. Josephine County*, 325 Or 101, 934 P2d 415 (1997), the Supreme Court addressed the differences between those statutes and the general ORS chapter 34 provisions:

"The * * * traditional distinction between [alternative and peremptory] writs of mandamus is not echoed in the statutes at issue here. As noted, the reference to '[t]he writ' in ORS 215.428(7)(b) describes 'a' writ that 'compel[s] the governing body' and that 'shall be issued *unless* the governing body shows that the approval would violate [particular specified land use laws or regulations].' (Emphasis added.) That is, there is only one 'writ' contemplated by that statute, and it is one that issues only *after* there has been an opportunity for the governing body to remonstrate. Under traditional Oregon mandamus procedure, a writ to that effect that issues after such an opportunity to remonstrate is a *peremptory* writ. ORS 34.150.

"The foregoing brings us to the second striking thing about ORS 215.428(7): The statute does not appear in other respects to contemplate that traditional mandamus procedures will be followed; it instead contains its own truncated procedure that is described in unique nomenclature. For example, there is no provision for a 'petition' to be filed by a 'relator,' as is the practice under ORS 34.130(1). By contrast, the process at issue under ORS 215.428(7)(b) begins when the 'applicant' (for the local land use action) chooses

to 'apply' for the writ. No particular form of document is prescribed. All that is necessary under the special procedure in ORS 215.428(7) is that the governing body be given an opportunity to respond, if it wishes to do so. That procedure is a 'show cause' approach. It thus appears that, both by virtue of the specific description of the writ in the statute and the special procedure contemplated by the statute, the legislature did not contemplate that an 'alternative' writ would be used in proceedings under ORS 215.428(7).[8]

---

"[8] In fact, the present proceeding *did* begin with the issuance of what was labeled an 'Alternative Writ of Mandamus' to the County. But the *labeling* of that procedural device says nothing about whether the label was *correct*. As we explain in text, any form of proceeding that would have given the governing body notice and an opportunity to make the showing contemplated by the statute would have sufficed."

325 Or at 110-11 (emphasis in original).

Given the court's dichotomy in *Murphy Citizens*, any reliance that the city places on the "traditional" role of the alternative writ is misplaced. We conclude that actions under ORS 227.178(7)(b), like actions of other kinds for which no different specific time or triggering event is provided, are "deemed commenced" when they are filed. Consequently, the remedy under ORS 227.178(7)(b) that relators seek is not precluded under the *Fraley* rationale.

■ The city argues alternatively that the circuit court lacked jurisdiction, because ORS 227.178(7)(b) violates Article III, section 1, the separation of powers provision of the Oregon Constitution. That section states:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

The city asserts that, by authorizing the courts to compel the approval of discretionary city permits and to determine whether applications for permits comply with city land use

legislation, the statute gives the judiciary authority to perform an executive function.[1] The city reasons that Article III, section 1, includes the administrative department in the executive; that Article VI of the constitution pertains to the administrative department, and sections 6 through 9 of that article deal with some matters about some city and county officers; that "[c]ounties and cities therefore are part of the Executive Department"; and that, in consequence, "[c]ourts cannot exercise city and county functions" consistently with Article III, section 1.

■　　Again, the city's argument is unpersuasive. Article VI does not purport to contain a comprehensive description of city and county governments and governmental functions. Nothing in the sections on which the city relies makes mention of city or county governing bodies or planning commissions, nor does anything in the provisions suggest that *all* city and county functions are administrative or executive in character. Indeed, the particular function in question—making decisions on land use permit applications—is a quasi-judicial rather than an administrative or executive exercise. *See, e.g., Dan Gile and Assoc., Inc. v. McIver*, 113 Or App 1, 831 P2d 1024 (1992).[2]

■　　Apart from the fact that the city misperceives Article VI as a cubbyhole into which all local government functions fit, it is also incorrect in its presupposition that there *can* be any question here that turns on the appropriate relationship of coequal departments of the government. ORS 227.178(7) specifically and the land use statutes in general are enactments of the *state* legislature, which impose standards and requirements on *cities and other localities* in connection with a subject that concerns "substantive, regulatory objectives of

---

[1] We note that, as part of its *nonconstitutional* arguments, the city asserts that the site review involved a "limited land use decision" rather than a discretionary permit. However, the city acknowledges in that context that, because it has not adopted the requisite local implementing legislation pertaining to limited land use decisions, the requirements for discretionary permits and zone changes in ORS 227.175 were applicable to its proceedings here. *See Gensman v. City of Tigard*, 29 Or LUBA 505 (1995). In any event, one of the premises of the city's *constitutional* argument is that the function the city was called upon to perform in connection with relators' application was a discretionary one.

[2] It also bears mention that city and county governing bodies routinely perform legislative functions.

the state." *City of Pendleton v. Kerns*, 56 Or App 818, 826, 643 P2d 658, *aff'd* 294 Or 126, 653 P2d 992 (1982); *see also Baxter v. Monmouth City Council*, 51 Or App 853, 856, 627 P2d 500 (1981). As such, that enactment is a proper exercise of the state legislative authority and does not intrude upon the constitutional home rule authority of cities. Or Const, Art XI, § 2. *See 1000 Friends of Ore. v. Wasco Co. Court*, 62 Or App 75, 80 n 4, 659 P2d 1001, *rev den* 295 Or 259 (1983).

Stated differently, the relevant constitutional relationship here is not that of the Judicial Department and any other branch of the state government, but that of the state and its cities. The state legislature had the constitutional authority to impose the requirement on cities that ORS 227.178(1) contains and it had the authority to prescribe the judicial remedy set forth in ORS 227.178(7)(b) for a city's violation of the statute. There is no colorable separation of powers issue here.

The city insists that we previously recognized that separation of powers principles broadly preclude courts from ordering local governments to make otherwise discretionary decisions in *Cordill v. City of Estacada*, 67 Or App 481, 678 P2d 1257 (1984). We do not read that decision so broadly. *Cordill* involved a mandamus action brought under ORS chapter 34, before the enactment of ORS 227.178. The petitioners argued that the trial court should have ordered the city to refrain from enacting any amendments to existing ordinances to permit a particular use of property. The trial court declined to enter such an order, and we affirmed, commenting that "[a]mendment of ordinances establishing such general policies is a legislative function," and that, "[i]n view of the principle of separation of powers of the judicial and legislative departments, mandamus will not lie to control a city's exercise of that function." *Id.* at 486. Those statements in *Cordill*—assuming that they comprise an accurate statement of the law—have no applicability to this case. No one in this case contends that the trial court should have ordered the city to refrain from engaging in an exercise of its legislative authority; at issue in this case is the approval of an application, not the amendment of existing local ordinances. Moreover, there was no question in *Cordill*, as there is in this case,

regarding the city's obligation to comply with an overriding state statute.

Relators have an actionable claim under ORS 227.178(7)(b), and the trial court erred in ruling otherwise.

Reversed and remanded.