Argued and submitted May 3, reversed and remanded July 7, 1999

# DEPARTMENT OF TRANSPORTATION
## and Howard W. Houston, Jr.,
*Respondents,*

*v.*

# CITY OF MOSIER,
## Scenic Highway Alliance and Ron Carroll,
*Petitioners.*

### (LUBA No. 97-251; CA A105593)

984 P2d 351

Tracy Pool Reeve, City Attorney, filed the brief for petitioner City of Mosier, and Daniel Kearns argued the cause and filed the brief for petitioners Scenic Highway Alliance and Ron Carroll. With him on the brief was Reeve Kearns, PC.

Anne L. Cottrell, Assistant Attorney General, argued the cause for respondent Department of Transportation. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Mark S. Womble argued the cause and filed the brief for respondent Howard W. Houston, Jr.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioners seek review of LUBA's reversal of the City of Mosier's governing body's (council) determination that, under provisions of the city's land use regulations, respondent state Department of Transportation (ODOT) does not have a nonconforming use to continue certain quarry operations that it conducts within the city.[1] We reverse and remand.

The council initiated the proceedings that began this matter on its own motion. It concluded that it had the authority to initiate and conduct a quasi-judicial hearing concerning the status of ODOT's use under section 9.3(2) of the city zoning ordinance (MZO). That section provides:

> "In case a building or other structure is or is proposed to be located, constructed, maintained, repaired, altered, or used, or land is or is proposed to be used, in violation of this ordinance, the building or land thus in violation shall constitute a nuisance and the City may, as an alternative to other remedies that are legally available for enforcing this ordinance, institute injunction, mandamus, abatement *or other appropriate proceedings to prevent,* enjoin temporarily or permanently, abate or remove the unlawful location, construction, maintenance, repair, alteration or use." (Emphasis added.)

The council's order further explained that its authority to enact the quoted provision and to apply it as it did was traceable to ORS 227.215 and ORS 227.280. ORS 227.215 allows cities to adopt "development ordinances" that regulate, *inter alia,* "building[s] or mining operation[s]," as the city's ordinance does here. ORS 227.280 provides that a city "council may provide for enforcement of any legislation established under ORS 227.215."

---

[1] We refer to the parties by their designations in this court. In this opinion, we do not reach any questions involving the merits of the city's decision or the substantive ordinance provisions on which the decision was based. The only ordinance provision with which we are now concerned is the procedural section 9.3 and whether the city was permitted to follow the procedures that it did under that section. We nevertheless note that the city's decision on the merits was based, *inter alia,* on the provision of the zoning ordinance pertaining to nonconforming uses.

Having concluded that it had the authority to do so the council conducted an evidentiary hearing and, on the merits, decided that any nonconforming rights that ODOT might have had had been lost by discontinuance. ODOT appealed the city's decision to LUBA, and respondent Houston intervened in the LUBA proceedings on ODOT's side. ODOT and Houston contended that the city council's interpretation of MZO 9.3 as authorizing it to initiate and conduct the quasi-judicial proceeding was "clearly wrong," that the ordinance provision as so interpreted would be contrary to state law, and that the city's decision on the merits was wrong in a number of respects. Over the dissent of one of its members, LUBA agreed with ODOT and Houston that the council's interpretation of the ordinance was reversibly wrong. LUBA explained, *inter alia*:

> "As Houston points out, each of the remedies listed in MZO 9.3(2) are equitable remedies, remedies traditionally available only from a court, and thus not remedies that the city can seek in a quasi-judicial proceeding. None of the listed remedies or types of proceedings in MZO 9.3(2) state or even suggest quasi-judicial remedies or proceedings such as the city engaged in here. * * * [N]o person could reasonably interpret the [relevant ordinance] phrases, considered in their context, in the manner attributed to the city council. The 'other appropriate proceedings' referred to in MZO 9.3(2) are limited by the terms of that provision to proceedings 'to prevent, enjoin temporarily or permanently, abate or remove the unlawful location, construction, maintenance, repair, alteration or use. None of the listed actions or forms of relief can be obtained through a quasi-judicial proceeding." (Footnote omitted.)

Having held that the city erred in concluding that the proceeding was authorized by the ordinance provision, LUBA found it unnecessary to reach the other issues raised by the parties, and it reversed the city's decision.

■     As LUBA's opinion noted, the test for reversal of a local governing body's interpretation of local land use legislation under the deferential standard of ORS 197.829(1)(a)-(c), and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), is whether the interpretation is "clearly wrong." *Goose Hollow Foothills League v. City of Portland*, 117 Or

App 211, 217, 843 P2d 992 (1992). We have explained that neither LUBA nor we may reverse a local interpretation under that test unless "no person could reasonably interpret the provision in the manner that the local body did." *Huntzicker v. Washington County*, 141 Or App 257, 261, 917 P2d 1051, *rev den* 324 Or 322 (1996).

■■ We do not agree with LUBA that the city council's interpretation at issue is reversible under that test. The term "other appropriate proceedings" in MZO 9.3 is facially broad enough to encompass the quasi-judicial governing body hearing that the council held it could and did initiate and conduct. The essence of Houston's contrary argument and of LUBA's contrary holding is that the specific remedies and proceedings that are *listed* in the section are of a kind that can only be obtained in judicial enforcement proceedings, *see* ORS 197.825(3)(a); hence, the "other appropriate proceedings" to which the ordinance refers must be of the same or a similar kind. However, nothing in ORS 197.829 or in *Clark* and its progeny requires local interpretations to follow the doctrine of *ejusdem generis* or any other particular interpretive methodology. *See Huntzicker*, 141 Or App at 260-62. The question is whether the end product of the local interpretive exercise is such that it is beyond any plausible understanding of the local legislation's language, policy or purpose.

The city's interpretation of MZO 9.3 is not reversible under that standard. Insofar as the nature of the proceeding is concerned, a quasi-judicial governing body hearing falls well within the scope of a plausible reading of the term "other appropriate proceedings" in its context. Insofar as Houston contends or LUBA concluded that the types of relief that are enumerated in MZO 9.3 are uniformly and necessarily of a kind that is compulsory in nature and that can only be obtained in a judicial proceeding, we again disagree. *At least* the remedy of "prevention" that the ordinance mentions is susceptible to a precatory rather than a mandatory implication. *See Webster's Third New Int'l Dictionary*, 1798 (unabridged ed 1993). In sum, we agree with the dissenting member of LUBA that the city council's interpretation of MZO 9.3, although "expansive," is not clearly wrong. The LUBA majority erred by reversing the city's decision on the basis of its contrary conclusion.

■    Houston contends, however, that MZO 9.3 is contrary to controlling state statutes if it is applied in accordance with the city's interpretation.[2] Houston reasons that ORS 197.763 and ORS 227.160 *et seq*.

> "[authorize] cities to conduct hearings on *applications* for permits, zone changes, and limited land use decisions and expedited land divisions within an urban growth boundary. · *See* ORS 227.160 to 227.187, generally, and ORS 227.175. There is no authority delegated to cities to unilaterally *initiate* quasi-judicial or 'contested case' hearings for the purpose of *adjudicating* pre-existing use rights." (Emphases in original.)

Houston further notes that ORS 227.160 *et seq.* do not contain a specific provision, like that in the otherwise generally similar statutes relating to county procedures, pertaining to "contested case" hearings. ORS 215.402(1).[3] From those premises, Houston derives the conclusion that a city may not

> "act in a *quasi-judicial capacity* in situations other than those expressly delegated by state statute, *i.e.*, applications for a permit, zone change, expedited land division or limited land use decision." (Emphasis in original.)

Although the city council traced its authority to enact the ordinance provision—and to apply it as it did—to ORS 227.280, Houston finds no inconsistency between that statute and the other particulars of his argument. He says:

> "While ORS 227.280 provides that the city may provide for enforcement of its development ordinances, it does not grant judicial or quasi-judicial authority to City * * *. City

---

[2] Although the parties sometimes refer to this and related points as a constitutional issue concerning the limits on the city's home rule authority, the principal point of Houston's argument, as we understand it, is that the procedure that the city followed is not permissible under the state land use statutes. We agree with Houston that the city's ordinance and the way in which the city applied it *must* be consistent with state law. *See* ORS 197.829(1)(d); *Seida v. City of Lincoln City*, 160 Or App 499, 982 P2d 31 (1999).

[3] ORS 215.402(1) provides:

" 'Contested case' means a proceeding in which the legal rights, duties or privileges of specific parties under general rules or policies provided under ORS 215.010 to 215.213, 215.215 to 215.263, 215.283 to 215.293, 215.317, 215.327, 215.402 to 215.438 and 215.700 to 215.780, or any ordinance, rule or regulation adopted pursuant thereto, are required to be determined only after a hearing at which specific parties are entitled to appear and be heard."

must seek enforcement in the circuit court as provided in ORS 197.825(3)."[4] (Citation omitted.)

Houston's initial premise is mistaken. Although there are some provisions in ORS 197.763, ORS 215.402 *et seq.,* and ORS 227.160 *et seq.* that confer certain implementing options on cities, counties or both, the overriding purpose of the statutes generally and of the quasi-judicial hearing provisions they contain in particular is to impose *requirements* on the local governments. *See, e.g., State ex rel Compass Corp. v. City of Lake Oswego,* 319 Or 537, 878 P2d 403 (1994); *Flowers v. Klamath County,* 98 Or App 384, 780 P2d 227, *rev den* 308 Or 592 (1989).[5] Contrary to Houston's thesis, the statutory provisions establishing quasi-judicial procedures in connection with applications for permits and the other applications that he describes are not a statutory conferral of authority on cities or counties but a state legislative mandate with which they are required to comply.

■■ Stated somewhat differently, Houston misperceives certain statutes—ORS 197.763 and ORS 227.160 *et seq.*— that describe certain circumstances under which cities *must* conduct quasi-judicial proceedings as containing an exclusive enumeration of the circumstances in which they *may* conduct such proceedings. That misperception aside, he offers and we are aware of no authority for the proposition that a city's authority to conduct quasi-judicial proceedings consistently with state law is limited to situations where a statute

---

[1] ORS 197.825(3)(a) provides:

"Notwithstanding subsection (1) of this section [granting LUBA exclusive jurisdiction to review land use decisions], the circuit courts of this state retain jurisdiction:

"(a) To grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b) or proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations[.]"

[5] The contested case provision in ORS 215.402, on which Houston relies, is illustrative. It does not give counties an option to conduct more adjudicative proceedings than cities have authority to conduct; it requires counties to afford contested case procedures in connection with certain land use regulatory activities— mainly relating to uses in farm zones. The apparent reason why no corresponding provision exists in the statutes applicable to cities is that they have little or no regulatory responsibility concerning the kinds of uses that are contemplated by ORS 215.402(1).

expressly mentions them. For that reason, we do not agree with Houston's implicit point that ORS 227.280 would be inconsistent with the other state statutes if it were construed to allow local proceedings of the kind the city employed here. For similar reasons, we do not share his view that ORS 227.280 itself cannot be understood to authorize such local proceedings simply because it does not expressly refer to quasi-judicial proceedings.

While our rejection of Houston's contentions as to why ORS 227.280 *cannot* be interpreted to allow city-initiated quasi-judicial enforcement proceedings does not quite answer the question of whether the statute *does* allow them, the elimination of the negative leaves us a very short distance from the affirmative answer. ORS 227.280 provides in the most general terms possible that city councils may provide for enforcement of local legislation of the kind in question. "Enforcement," by its nature, is a governmental activity that a responsible governmental body may initiate and conduct independently of private application or instigation. There is no reason why it cannot include *sua sponte* determinations of compliance by a city governing body of the kind that the council interpreted MZO 9.3 to encompass. Similarly, there is no reason why those determinations cannot be based on and made in a quasi-judicial setting. Indeed, to the extent that the city land use legislation regulates property-specific and limited-scale uses, like ODOT's here, it is at least arguable that any fact-based compliance determination by a city's governing body can *only* be made through a quasi-judicial process. *See, e.g., Estate of Gold v. City of Portland*, 87 Or App 45, 740 P2d 812, *rev den* 304 Or 405 (1987).

■■ Finally, we find no merit in Houston's suggestion that ORS 227.280 permits no enforcement authority or activities by a city beyond the pursuit of the judicial remedies set forth in ORS 197.825(3). That suggestion would make surplusage or a nullity of one statute or the other. Moreover, the suggestion is inconsistent with the language of both statutes. ORS 227.280 plainly contemplates enforcement activity by the city, while ORS 197.825(3)(a) equally plainly envisions only judicial remedies. It is axiomatic that the police power is not required either to begin or end at the courthouse door,

under ORS 227.280 or, generally, under statutes that authorize its exercise.[6]

In summary, we conclude that the city council's interpretation of MZO 9.3 as allowing its self-initiated quasi-judicial determination was not "clearly wrong," and that MZO 9.3 as so interpreted is within the scope of the "enforcement" activities that ORS 227.280 authorizes city councils to establish.[7] Consequently, we hold that LUBA erred in the way asserted by petitioners' first assignment.

Petitioners make one other assignment, in which they contend that the statement of facts in LUBA's opinion is inaccurate and departs from the facts as the city found them. As petitioners note, both "Houston and ODOT raised substantial evidence claims, none of which LUBA reached," given its disposition and which, given ours, we remand for LUBA, *inter alia*, to decide. Beyond that, it is difficult for us to discern exactly what petitioners think that we can or should do about the putative problems with LUBA's statement of facts. Petitioners' concern is that the statement will become the "law of the case" in any subsequent proceedings. However, any substantial evidence challenges to the city's findings that have been raised in the appeal to LUBA will be before it on remand for it to address for the first time. LUBA's *description* of the facts in its opinion has no bearing on its obligation to review the parties' arguments and the record in connection with any issues that have been raised concerning the findings, and LUBA's disposition of those issues will be reviewable by us should review be sought after LUBA's decision on remand. If petitioners' assignment is a disguised invitation to us to engage in factual review at this time, ORS 197.850 does not allow us to accept the invitation.[8]

---

[6] We, of course, do not imply that the city council *may* not avail itself and other city officials of judicial remedies, in addition to or instead of enforcing the ordinance by other means.

[7] Because we have taken the parties' arguments on their own terms, the only statutory question that we have decided is the effect of ORS 227.280. By so doing, we imply no answer—either negative or affirmative—to questions that might arise concerning the authority of cities under other statutes and/or regulations to do more or less what the city did here.

[8] Similarly, Houston makes one argument that we have not addressed, which requires factual development and/or review and which is therefore not in a posture for our consideration at the present time.

■     The remaining issue that calls for discussion was presented for the first time at oral argument by ODOT. Although the particulars of the argument are not wholly clear to us, its general thrust is that some compulsory enforcement *action*—by the city itself or the courts—must occur before the city's decision can have any effect. Notwithstanding the untimeliness of the argument, we will address it insofar as it implicates the jurisdictional question of whether the city's decision is a final land use decision that comes within LUBA's review authority. We conclude that it is. The decision "concerns the application of a land use regulation." ORS 197.015(10)(a)(A)(iii). It is also a "final" decision, at least as a declaratory ruling. *See Medford Assembly of God v. City of Medford*, 297 Or 138, 681 P2d 790 (1984), *cert den* 474 US 1020 (1985); *Terraces Condo. Assn. v. City of Portland*, 110 Or App 471, 823 P2d 1004 (1992). The fact that the decision is not self-executing does not affect its finality, nor does the fact that the city could have elected to seek a judicial remedy under ORS 197.825(3)(a) in the first instance instead of following the approach that it did. *See Recovery House VI v. City of Eugene*, 150 Or App 382, 386 n 3, 946 P2d 342 (1997).

We remand for LUBA to decide the assignments of error that it did not reach.

Reversed and remanded.